480 So.2d 1279 (1985)
Jason Thomas DEATON, Appellant,
v.
STATE of Florida, Appellee.
No. 65437.
Supreme Court of Florida.
November 7, 1985.
Rehearing Denied January 30, 1986.
*1280 Michael D. Gelety, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen. and Robert L. Teitler, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Jason Thomas Deaton appeals his conviction for first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and we affirm.
In May, 1983, the 18-year-old appellant, appellant's codefendant Dean Hall, and three runaway teenage girls moved in together at a Fort Lauderdale motel. On approximately May 27, according to the testimony of two of the girls, appellant expressed a desire to leave Fort Lauderdale but noted that he needed a car and money. They testified that appellant asked Hall to arrange to meet with the victim, Santi Campanella, and described the following plan: When Campanella picked up Hall, appellant would request a ride, sit behind Campanella and strangle him with a lamp cord. Each of the three girls testified that before appellant and Hall left the motel room the following evening to meet with Campanella, appellant stuffed a lamp cord down his shirt and indicated that he planned to use it to kill Campanella. Two of the girls observed appellant sitting directly behind Campanella as Campanella drove away from the motel. Appellant and Hall returned to the motel a short time later in Campanella's car, picked up the girls, and began driving to Tennessee. The girls each testified that appellant threatened they would suffer the same fate as "the stiff in the trunk" if they tried to leave. Each girl also noted that appellant had laughed and joked while graphically describing his struggle to kill Campanella and how the victim had begged for his life. Testimony also indicated Hall had struck the victim in the face and that blood was visible on appellant and in the car's interior.
The girls' testimony further established that on May 29, after arriving in Tennessee, appellant and Hall removed the victim's body from the trunk of the car and *1281 dropped it in a well. They then drove to a lake, where appellant and Hall washed blood off themselves and out of the trunk. Floor mats and a lug wrench subsequently recovered from that site contained blood and fibers consistent with the victim's. Testimony revealed that the group later attempted to use the victim's credit card at a Knoxville clothing store. The five then continued on their travels until they reached Arkansas, where the girls were arrested at a truck stop for loitering and sent to their homes.
On June 8, while appellant and Hall were in a Tennessee camera shop, police spotted the victim's car. Appellant and Hall were arrested when they returned to the vehicle. That evening, after being advised of and twice waiving his Miranda rights in writing, appellant gave Tennessee police a statement in which he denied knowledge of Campanella and of the source of the car. The following day, in a taped statement, appellant confessed he put a cord around the victim's throat to "hold" him while Hall hit the victim. Later that day, Hall led officers to a well where they found the victim's body with an electrical cord tied tightly around the neck. An autopsy revealed the cause of death to be "strangulation from the ligature around the neck." The coroner testified that blows to the victim's head or chest would not have caused death, and that the victim died "at least several days and probably not more than a couple of weeks" prior to the June 9 autopsy. The state also introduced two letters in which appellant confessed to the murder of Campanella and exculpated Hall. Appellant testified he had written the letters "out of guilt."
Appellant contended at trial that he had killed Campanella in self-defense while in Tennessee and introduced the testimony of a pathologist who estimated the date of the victim's death to be June 5 or 6. Hall's aunt and mother testified that they saw the victim in Tennessee on May 29 in the company of appellant and Hall.
The jury found appellant guilty of first-degree murder and robbery with a deadly weapon. During the penalty phase, defense counsel stated that appellant had "led a life of neglect," but offered no other mitigating evidence. In accordance with the 8-to-4 recommendation of the jury, the trial judge imposed the death penalty on appellant, finding one mitigating and three aggravating circumstances.

Guilt Phase
Appellant challenges his conviction by arguing that the trial court erred: (1) in denying appellant's motion to suppress statements he made to police officers; (2) by admitting photographs of the body and a videotape of the recovery of the body; (3) by admitting into evidence the fact that appellant possessed and helped sell a stolen camera and that he participated in a robbery in Fort Lauderdale; (4) in preventing cross-examination of a witness regarding the reputation for truth and veracity of another witness; (5) in failing to conduct an in camera hearing regarding the state's failure to supply a tape-recorded statement given by a witness; and (6) in allowing testimony regarding the attempted use of the victim's credit card. With the exception of the suppression question, we find that none of appellant's contentions merit discussion.
Appellant's suppression argument is focused on the trial court's denial of appellant's motion to suppress statements made to police officers on June 9. Appellant contends that the interrogating officers coerced him into making certain statements by telling him that the victim's family was involved in organized crime and that the victim's organized crime connections would kill appellant if he were to be released from prison. The record reveals that, during the hearing on the motion to suppress, two officers testified that neither they nor the other officers present during interrogation indicated that the victim was connected with organized crime or threatened appellant in any manner. Appellant, in fact, testified that he had learned of the rumor from a fellow prisoner, not from the officers. The trial judge denied appellant's motion to suppress, finding the statements were "knowingly, freely and voluntarily *1282 given without threats, inducements or promises." We find the record supports the trial court's ruling that appellant was not coerced or threatened into giving the June 9 taped statements. See Johnson v. State, 438 So.2d 774, 776 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); DeConingh v. State, 433 So.2d 501, 504 (Fla. 1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984).
Appellant further argues that the statements should be suppressed on the ground that the officers acted improperly by initiating contact with appellant on June 9 after appellant exercised his right to terminate uncounseled interrogation the previous day. Testimony reflects that officers from Fort Lauderdale awakened appellant in his cell in Tennessee on the night of June 8, introduced themselves and informed him that they would talk with him in the morning. Appellant was hostile and stated that he didn't understand why the officers were bothering him because he had told the Tennessee officers all he knew. One officer testified that appellant responded affirmatively when asked whether he would be willing to talk to the officers the following morning. The record, in our view, fails to support appellant's contention that on the evening of June 8 he had expressed a desire to invoke his right to remain silent under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
Appellant concludes by contending the evidence is insufficient to support his conviction. We disagree.

Penalty Phase
In imposing the death sentence, the trial judge found three aggravating circumstances: (1) the murder was committed while appellant was engaged in a robbery; (2) the murder was heinous, atrocious, and cruel; and (3) the murder was cold and calculated. In mitigation, he found that appellant had no significant history of prior criminal activity.
Appellant first asserts that the prosecutor improperly doubled aggravating circumstances when he argued to the jury that the murder was perpetrated during the commission of a robbery and for pecuniary gain. Because the trial judge properly recognized that these findings encompassed only one aggravating factor, we find that the prosecutor's argument did not prejudice appellant. See Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
Appellant further contends that the trial judge erred in finding that the murder was heinous, atrocious, and cruel and that it was cold and calculated. The trial judge found, in pertinent part:
H. The capital felony was especially heinous, atrocious, or cruel.
CONCLUSION
This aggravating circumstance does apply. The evidence is that an electric cord was put around the victim's neck while he was driving the car. Then he was transported to another section of Fort Lauderdale where he was strangled to death. Witnesses testified that the episode of killing Santi P. Campanella took 15 minutes and that the victim begged and pleaded for his life and that he said he would give them anything they wanted if they would let him live. Witnesses also testified that afterwards the Defendant, Jason Thomas Deaton, said that while the victim begged for his life, he tightened the cord until the victim started spitting up blood. The evidence shows that the Defendant laughed and joked about how long it took the victim to die. The Defendant enjoyed unmercifully the pain and suffering the victim was forced to endure. Therefore, this crime was especially conscienceless, pitiless and unnecessarily torturous.
I. The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.

*1283 CONCLUSION
This aggravating circumstance does exist. The evidence is the day before the Defendant discussed how he would kill the victim by strangulation and even chose his weapon, the electric cord. This crime was a vicious scheme in its origin, operation and execution and was a cold calculated plan to kill. There was no moral or legal justification whatsoever for the killing.
We conclude that the record amply supports the trial judge's findings. See Johnson v. State, 465 So.2d 499 (Fla. 1985); Clark v. State, 443 So.2d 973 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984); Middleton v. State, 426 So.2d 548 (Fla. 1982), cert. denied, 463 U.S. 1230, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983).
Appellant next argues the trial judge erred in failing to find appellant's age as a mitigating circumstance. With respect to that factor, the trial court found the following:
This mitigating circumstance does not apply. The Defendant's date of birth is July 26, 1964 which makes him 18 years and 10 months at the time of the offense. Jason Thomas Deaton had been living on his own for several years. His background indicates he is not of tender age but was an adult at the time and capable of understanding his act.
"There is no per se rule which pinpoints a particular age as an automatic factor in mitigation." Peek v. State, 395 So.2d 492, 498 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). We find the trial judge acted within the bounds of his discretion in rejecting appellant's age as a mitigating factor under the peculiar circumstances of this case. We conclude that, even had this mitigating factor been found, it would not have offset the three aggravating factors properly found by the trial court. See Bassett v. State, 449 So.2d 803 (Fla. 1984). Appellant also argues the trial judge did not properly apply Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), because he failed to find as a mitigating circumstance the cumulative effect of appellant's age, troubled childhood, and lack of significant history of criminal activity. This evidence was known to the trial judge and it is clear he did not believe it to be of such significance that it warranted the finding of this mitigating circumstance.
In his final point, appellant contends that he cannot be constitutionally sentenced to death because his codefendant, Hall, received a life sentence for the victim's murder. We reject this argument, finding that the facts of this case justify appellant's and Hall's disparate sentences. The evidence reveals that appellant was the dominant individual in this criminal episode. Appellant administered the "death blow" to the victim and, although it was Hall who arranged to meet with the victim, appellant, not Hall, actually instigated the murder. See Bassett v. State; Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).
For the reasons expressed, appellant's conviction and sentence are affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in the conviction, but dissents from the sentence.