492 So.2d 1059 (1986)
Richard M. COOPER, Appellant.
v.
STATE of Florida, Appellee.
No. 65133.
Supreme Court of Florida.
July 17, 1986.
Rehearing Denied September 10, 1986.
*1060 John E. Swisher and Robert H. Dillinger of Dillinger & Swisher, St. Petersburg, for appellant.
Jim Smith, Atty. Gen. and Theda James Davis, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant, Richard Michael Cooper, appeals his convictions of three counts of first-degree murder and sentences of death on each count. We have jurisdiction under article V, section 3(b)(1), Florida Constitution, and we affirm.
In the early morning of June 18, 1982, the Clearwater Police Department and the Pinellas County Sheriff's Department received calls from eight-year-old Chris Fridella, pursuant to which several officers were dispatched to his residence. They found three men, one of whom was Chris's father, Steven, lying face down on the living room floor with duct tape binding their hands behind their backs. All were dead, apparently due to gunshot wounds. Medical testimony at trial established that the deaths had resulted from shotgun wounds in the range of three to six feet. The house had been ransacked, the victims' wallets had been emptied, and the television volume was turned to the maximum.
Information received on January 15, 1983, from Robin Fridella, Steven Fridella's ex-wife, led police to appellant and accomplices Terry Van Royal and Jason Dirk Walton. Police contacted appellant and interviewed him on January 20, 1983, at which time he confessed. According to appellant, he, Walton, Royal, and Walton's younger brother, Jeff McCoy, had planned the robbery for a week. On June 17, 1982, they set out with ski masks, gloves and firearms in the trunk of the car, including two shotguns. Upon arrival at the house, McCoy stayed in the car while the other three entered the residence. One of the victims was asleep on the couch, one was in a bedroom, and Steven and Christopher Fridella were sleeping in the back bedroom. The adult victims were put on the living room floor with their hands taped. Chris Fridella was put in the bathroom. Appellant and Royal guarded the victims while Walton ransacked the house. One of the victims recognized Walton, who told his co-perpetrators they therefore would have to kill the adults. Walton's own gun misfired, and he ordered the others to shoot.
After appellant and Royal fired their shotguns at the victims, the perpetrators ran out. Walton told appellant that one of the victims was not dead; appellant returned and shot Fridella a second time. Appellant stated that he had been drinking and smoking marijuana the day of the murders, but that he was aware of what he was doing. In a second statement given January 24, 1983, appellant stated that McCoy accompanied the others into the house but was ordered to return to the car prior to the shootings.
The jury found appellant guilty of first-degree murder as charged and recommended the death penalty on all three counts. The trial court imposed sentences in accordance with the jury's recommendations, finding five aggravating and no mitigating factors.
*1061 Appellant first challenges the admission at trial of a ski mask recovered from a box in the closet of the bedroom of his mother's and stepfather's house, where he had lived from January of 1982 until his arrest on unrelated charges in the summer of that year. At the time of the search, June, 1983, appellant was incarcerated for the murders in this case, having confessed to them the previous January. The police had reason to believe the mask was in the house because appellant had told a fellow inmate that it was at his stepfather's house in a box in a closet. They went to the residence and told the stepfather, Mr. Kokx, that there was a ski mask in the bedroom appellant had occupied. The police asked whether they could look for it or if he would do so. Mr. Kokx invited the officers inside, went to the back of the house, and came out with a green ski mask, requesting a receipt therefor. Mr. Kokx testified that it was his understanding that appellant had spoken with them regarding the mask. The police testified, however, that they never told Mr. Kokx that it was appellant who told them that the ski mask was there.
The fourth amnendment prohibits unreasonable searches and seizures, such as a warrantless search and seizure in a place where a person maintains a reasonable expectation of privacy. United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A defendant who has been taken into custody is entitled to fourth amendment protection against warrantless searches of the premises in which he was residing at the time of arrest absent some lawful exception to the warrant requirement. Elson v. State, 337 So.2d 959 (Fla. 1976).[1]
When a third party gives permission to search, that third party
must possess common authority over or other sufficient relationship to the premises or effects sought to be inspected to justify a warrantless search. This common authority is decided on the basis of the following criteria: 1) the individual's reasonable expectation of privacy in the area; 2) whether others generally had access to the area; and/or 3) whether the objects searched were personal effects of the individual unavailable to consent.
Preston v. State, 444 So.2d 939 (Fla. 1984). The mask was found by Mr. Kokx in a closed box in a closet in the room formerly occupied by appellant at the time of his incarceration, the summer of 1982.[2] Assuming that a warrantless search occurred, we find that under the circumstances appellant, at the time of the search, did not have a reasonable expectation of privacy in the bedroom he had formerly occupied. After appellant was convicted of one crime and confessed to participation in three murders and was arrested for them, it would not have been reasonable for him to expect that the room he had occupied in his parent's home for approximately eight months would remain in the same condition as he had left it when he was arrested approximately ten months earlier. There is no evidence that he requested or desired that his belongings be kept in storage until he returned. Our holding is buttressed by the fact that appellant disclosed to a cellmate the existence and whereabouts of the ski mask. We also find that Mr. Kokx had access to the closet of appellant's bedroom. Assuming arguendo that joint access was lacking at the time appellant was arrested, appellant's mother and stepfather had assumed control by the time the mask was obtained. Mr. Kokx had removed most of appellant's belongings from the room when a house guest used it during a visit. Sometime after handing over the ski mask, Mr. Kokx discarded the rest of appellant's effects at the city dump. We find that under *1062 the circumstances Mr. Kokx had the requisite common authority to turn the ski mask over to the police. Moreover, in view of the overwhelming evidence against appellant, including his own confessions, as to participation and using the ski mask, any error in admitting the ski mask itself into evidence was harmless. We affirm the guilt phase of the trial.
Appellant's first argument regarding the sentencing phase is that the trial court erred in finding the aggravating circumstance that the capital felony was committed in the course of a kidnapping. We agree. The evidence showing that Chris Fridella was confined in the bathroom so that no harm would come to him does not support a kidnapping.
Appellant contends that the trial court erred in finding the aggravating circumstances that the capital felony was committed for the purpose of avoiding arrest and that the murders were committed in a cold, calculated and premeditated manner. He argues that it is not logical to find that the murders were both committed to eliminate a witness and cold, calculated and premeditated. We have found these two factors to co-exist if supported by the evidence. See, e.g., Burr v. State, 466 So.2d 1051 (Fla.), cert. denied, ___ U.S. ___, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985); Johnson v. State, 465 So.2d 499 (Fla.), cert. denied, ___ U.S. ___, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985); Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). Both factors are supported by the evidence in this case. One of the victims recognized J.D. Walton, despite his disguise. This case is a clear one of witness elimination. Moreover, there was sufficient evidence of both heightened premeditation and execution-style killing. See Herring.
Appellant argues that it was error for the trial court to find that the murders were especially heinous, atrocious and cruel. We disagree. There is evidence that the victims were acutely aware of their impending deaths; they were bound and rendered helpless; a gun pointed at the head of one of the victims misfired three times; Steven Fridella pleaded for his life.[3]
Appellant contends that the trial court erred by rejecting as an instruction and not considering as a mitigating circumstance evidence that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. He relies upon evidence that he ingested intoxicants prior to the commission of the murders. The state points out that there was evidence that appellant was not intoxicated. Evidence of alcohol and marijuana use on the night of a murder does not compel a finding of this mitigating circumstance. Simmons v. State, 419 So.2d 316 (Fla. 1982). A trial court does not err in rejecting this mitigating circumstance when it is inconsistent with testimony presented and in light of the fact that the defendant was able to give a detailed account of the crime. See Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). We hold that the presentation of evidence of some alcohol and marijuana consumption, without more, does not require a jury instruction on this mitigating circumstance.
Appellant argues that the trial court erred in admitting testimony from the state that the defense would call a psychiatrist to testify concerning the mitigating circumstance of substantial domination of another person. The state correctly points out that the defense did not preserve this point by a proper objection. Moreover, we find that the error, if any, was harmless.
Appellant's last argument is that the trial court erred in not finding that his age at the time of the offense, eighteen, was a mitigating factor. The trial court's *1063 finding regarding this factor was as follows:
The age of the Defendant at the time of the crime offers no mitigation. He was legally an adult. The testimony indicates that he was mature, understood the distinction between right and wrong and the nature and consequences of his actions.
"There is no per se rule which pinpoints a particular age as an automatic factor in mitigation." Peek v. State, 395 So.2d 492, 498 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). The trial judge acted within his discretion and, even had this factor been found, it would not have offset the four properly found aggravating factors. See Deaton v. State, 480 So.2d 1279 (Fla. 1985).
We are left with five valid aggravating factors and no mitigating factors and thus with the presumption that death is the appropriate penalty. White v. State, 446 So.2d 1031 (Fla. 1984). For the reasons expressed, appellant's convictions and sentences are affirmed.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
NOTES
[1] The defendant in Elson had not been convicted of a crime at the time of the search. Appellant in this case was serving time for an unrelated conviction at the time he was arrested on the murder charges.
[2] The state does not argue that the police action in obtaining the mask from the stepfather was not a search; therefore, we assume that this issue is not in dispute.
[3] Appellant does not challenge the findings of capital felony committed for pecuniary gain and previous capital felony.