856 So.2d 969 (2003)
Richard M. COOPER, Appellant,
v.
STATE of Florida, Appellee.
Richard M. Cooper, Petitioner,
v.
James v. Crosby, Jr., Respondent.
Nos. SC01-2285, SC02-623.
Supreme Court of Florida.
June 26, 2003.
Rehearing Denied September 25, 2003.
*971 Stephen F. Hanlon, Robin L. Rosenberg, and Rachel E. Fugate of Holland & Knight LLP, Tallahassee, FL; and Mark S. Gruber, Office of the Capital Collateral, Regional CounselMiddle, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Carol M. Dittmar, Senior Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Richard M. Cooper appeals a circuit court order denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Additionally, he petitions this Court for a writ of habeas corpus. We have jurisdiction under article V, section 3(b)(1) and (9), of the Florida Constitution. For the reasons expressed below, we conclude that all of Cooper's claims are barred or meritless, and thus deny relief.

Facts and Procedural History
Cooper is currently under sentence of death for the 1982 murder of three men in Pinellas County, Florida. The facts surrounding Cooper's crimes were fully detailed in our opinion affirming his conviction *972 and sentence on direct appeal. See Cooper v. State, 492 So.2d 1059, 1060 (Fla. 1986). Essentially, Cooper and two other individuals concealed their identities with gloves and ski masks, entered a residence at night, gathered the three adult occupants in the living room of the home, and bound their hands with tape. See id. As the group proceeded to rob the men and remove property from their dwelling, one of the victims recognized one of the assailants, and, therefore, Cooper and his accomplices executed the men with shotguns. See id. Cooper was found guilty of three counts of first-degree murder as charged, and the jury recommended the death penalty on all three counts. The trial court followed the jury's recommendations, finding the existence of six aggravating circumstances[1] and no mitigating factors, and this Court affirmed on direct appeal. See id.
Cooper now appeals the circuit court's denial of his postconviction motion under rule 3.850, raising five comprehensive claims, some of which contain distinguishable alternative arguments.[2] Additionally, he has invoked the original jurisdiction of this Court by filing a petition for a writ of habeas corpus in which he asserts twelve claims.[3]

Rule 3.850 Appeal
Cooper's first claim is centered upon the testimony and conduct of Paul Skalnik, a witness for the State. During Cooper's trial, Skalnik related to the jury a conversation in which he and Cooper, cellmates *973 at the time, discussed the circumstances surrounding Cooper's crime, as well as Cooper's feelings regarding the victims' deaths. Prior to the commencement of trial proceedings, the defense sought to preclude the testimony of Skalnik, asserting that he was operating as an agent of the State when he obtained the incriminating statements from Cooper. Thus, according to Cooper, the conversation constituted improper interrogation in violation of his Sixth Amendment right to counsel. The trial court denied Cooper's motion in limine, and allowed Skalnik to testify.
As an initial matter, Cooper's contention that Skalnik was a de facto state agent at the time of their conversation in jail is refuted by the record. Under this Court's decision in Rolling v. State, 695 So.2d 278 (Fla.1997), the Sixth Amendment to the United States Constitution prohibits law enforcement officers from prearranging the questioning of defendants by incarcerated informants. See id. at 290. The principle is self-evident: the police may not sidestep constitutional protections by employing jail residents as independent contractors to interrogate defendants without the presence of an attorney. See United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). However, a violation of the dictates of Rolling is only shown where the defendant establishes that the informant and the authorities had a preexisting plan for the informing witness to obtain a confession.
In the instant case, the record refutes Cooper's contention that the State recruited Skalnik as an informant. Indeed, the entirety of the evidence before this Court supports the State's contention that Skalnik was upset by Cooper's bragging regarding the murders, and he subsequently contacted the authorities of his own accord. Skalnik had, at one time, been employed as a police officer in Texas, and this also motivated him to report what Cooper had told him. Because Cooper's claim that Skalnik was an agent of the State at the time of their jailhouse conversation is refuted by the record, we deny relief based thereon.
Cooper also contends that the State deliberately presented false statements by Skalnik to the trial court in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To prove a Giglio violation, "a defendant must show: (1) that the testimony was false; (2) that the prosecutor knew the testimony was false; and (3) that the statement was material." Spencer v. State, 842 So.2d 52, 70 (Fla.2003). In the instant case, Cooper asserts that Skalnik's testimony that Cooper's case was one of the first cases in which he had testified as an informant was completely false, and the State was obligated under Giglio to correct this misrepresentation. Our review of the trial transcript, however, reveals that the scope of Skalnik's comment that this case "was the first occasion that [he] provided information to law enforcement" is properly limited by preceding questions. As is clear from the hearing record, defense counsel introduced this line of questioning by asking, "Mr. Skalnik, on how many instances and in how many different cases have you provided information to law enforcement agents since your incarceration in November 1982?" (Emphasis supplied.) When taken in conjunction with this time parameter, Skalnik's subsequent testimony was neither false nor misleading. Thus, Cooper has failed to show the existence of the first Giglio element, and his claim must fail.
Finally, in connection with his other claims regarding Skalnik's testimony for the State, Cooper contends that the *974 State failed to provide the defense with information it could have used to impeach Skalnik, in violation of the precepts of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Cooper contends that the State withheld evidence that Skalnik received benefits in exchange for his testimony at trial. We have reviewed the record, and conclude that the trial court below was correct in its conclusion that "there is a dearth of evidence in the record to suggest that Skalnik ever received anything of value from the State. The only indication that Skalnik ever received anything of value is offered in the form of pure speculation." Cooper's Brady claim is meritless, and we therefore deny relief.
In his second postconviction claim, Cooper contends that despite repeated requests pursuant to chapter 119 of the Florida Statutes, the State has failed to provide him with public records relating to the various instances in which Skalnik has testified for the State. Because the State has neither furnished the documents to him nor stated specific reasons why the material is exempted from disclosure, Cooper requests that this Court order the State to comply. Our examination of the record on appeal belies Cooper's assertions. As mandated by chapter 119, the State detailed the statutory exemptions it relied upon to shield certain documents, and provided the entirety of the materials to the court below for in-camera review. The trial court reviewed the records, and concluded that the State's assertions regarding the exempt status of the documents were well founded. The trial court did not err. Indeed, Cooper makes no claim that he has not been fully and exhaustively informed regarding Skalnik's background as a State's witness. Because the sole purpose for which Cooper seeks examination of these records is to research Skalnik's background, we can discern no scenario in which the limitation upon Cooper's access to these documents hampered his attorneys' postconviction discovery efforts.
In his third claim, Cooper asserts that his trial attorneys were unable to adequately represent him, due to significant conflicts of interest. To establish an ineffectiveness claim premised on an alleged conflict of interest, Cooper must establish
that an actual conflict of interest adversely affected his lawyer's performance. A lawyer suffers from an actual conflict of interest when he or she actively represents conflicting interests. To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. A possible, speculative, or merely hypothetical conflict is insufficient to impugn a criminal conviction.
Hunter v. State, 817 So.2d 786, 791-92 (Fla.2002) (citations and quotation marks omitted). A review of the facts contained in the record before this Court reveals no actual conflict, and we conclude that Cooper's assertions amount to no more than the speculation deemed insufficient in Hunter.
The first of Cooper's trial attorneys, Ronnie Crider, had, prior to his representation of Cooper, been employed as a deputy sheriff and as a prosecutor with the Sixth Circuit State Attorney's Office. Although Crider had some interaction with law enforcement officers who eventually participated in the investigation of Cooper's crimes while a sheriff's deputy, and was an employee of the State Attorney's Office during the investigation of the instant case, Crider never had any actual or substantive connection with the investigation or prosecution of Cooper. Nothing *975 before this Court suggests that Crider's interests were compromised at trial, and Cooper's claim that Crider suffered from a conflict of interest is entirely hypothetical.
With regard to Cooper's second trial counsel, Ky Koch, Cooper contends that Koch's prior representation of Skalnik during a sentence reconsideration hearing constitutes a specific, prejudicial conflict of interest because Koch was dedicated to protecting Skalnik, and thus could not zealously represent Cooper at trial. The record reflects that Koch's brief representation of Skalnik did not prejudice Cooper's case. Koch aggressively cross-examined Skalnik, eliciting testimony which severely damaged the witness's credibility.[4] Additionally, Koch's testimony during the proceeding below reveals that Cooper was informed of his attorney's prior representation of Skalnik, and decided to proceed with Koch as his attorney without objection. Both of Cooper's claims asserting that his trial attorneys were laboring under actionable conflicts of interest are without merit.
Next, Cooper claims that his trial attorneys failed to locate and present significant mitigating evidence to his penalty phase jury, thereby prejudicing his case and causing him to be sentenced to death. To prevail on this ineffective assistance of counsel claim, Cooper must meet both prongs of the following test:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Valle, 778 So.2d at 965 (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Because we conclude that the preparation of Cooper's attorneys for the penalty phase and their decisions regarding what evidence to present at trial were entirely strategically reasonable, we decline to grant Cooper relief.
Cooper argues that his attorneys should have presented more evidence regarding the unfortunate circumstances in which he was raised. In support of this claim, Cooper presented the testimony of his elementary school principal, two siblings, and a childhood friend during the trial court proceedings. In sum, these witnesses detailed the repetitive physical abuse to which Cooper was subject during his formative years. Specifically, they described a home in which the family was under constant threat of physical violence from Cooper's father, a man who often acted upon his threats in a frightful fashion. Additionally, these witnesses opined that Cooper's negative home life drove him to abuse alcohol and drugs at a fairly young age.
*976 We conclude that the introduction of Cooper's additional proffered evidence regarding his unfortunate and abused background does not constitute a "clear, substantial deficiency [which] so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). First, a substantial part of the information regarding Cooper's disadvantaged childhood was presented at Cooper's trial. During Cooper's penalty phase, Cooper's mother testified that Cooper's father was both violent and emotionally abusive to Cooper during his formative years. Thus, in large part, introduction of the evidence proffered below would have been repetitive. Also, the State persuasively established five significant aggravating factors at trial: (1) heinous, atrocious, or cruel; (2) cold, calculated, and premeditated; (3) murder committed to avoid arrest; (4) murder committed for pecuniary gain; and (5) commission of prior violent felonies. See Cooper, 492 So.2d 1059. Although the introduction of the mitigating evidence identified by Cooper might have provided his penalty phase jury with a more extensive picture of his upbringing, Cooper has not shown that this evidence would have caused the jury to conclude that "the balance of aggravating and mitigating circumstances did not warrant death." Cherry v. State, 781 So.2d 1040, 1048 (Fla.2000) (quoting Strickland, 466 U.S. at 695, 104 S.Ct. 2052). Thus, Cooper's claim of ineffective assistance of counsel fails.
Cooper also takes issue with his trial counsels' failure to present evidence during the penalty phase regarding his mental state at the time of his crimes. In support of the claim that his counsels' performance was constitutionally inadequate, Cooper presented the testimony of Dr. Brad Fisher below, who testified that Cooper suffered from a dependent personality disorder and organic brain damage which could have interfered with his ability to discern right from wrong. Cooper contends that presentation of this evidence at trial could have been very persuasive, and his attorneys' failure to introduce the information constitutes ineffective assistance.
The record reflects that before Cooper's trial, his attorneys arranged an examination and evaluation by Dr. Sidney Merin, who administered a battery of psychological tests and concluded that Cooper suffered from an antisocial personality disorder, a borderline personality disorder, a substance abuse disorder, and an isolated explosive disordernone of which would have affected his ability to differentiate between right and wrong at the time of his crimes. Trial counsels' decision not to present Dr. Merin as a mitigation witness, because his conclusions regarding Cooper's culpability were potentially damaging, is precisely the type of strategic decision which Strickland protects from subsequent appellate scrutiny. The issue before us is not "what present counsel or this Court might now view as the best strategy, but rather whether the strategy was within the broad range of discretion afforded to counsel actually responsible for the defense," Occhicone v. State, 768 So.2d 1037, 1049 (Fla.2000); therefore, the attack upon trial counsels' performance on this basis fails.[5]
*977 Finally, our examination of the record leads us to conclude that the trial court properly denied a number of Cooper's claims in a summary fashion. As these claims were all without merit[6] or insufficiently pled,[7] we affirm the trial court's decision to deny the claims without a hearing. Because we conclude that the entirety of the trial court's order is supported by law and factual evidence contained in the record, we affirm the judgment below.

Habeas Petition
In the first of Cooper's claims meriting discussion,[8] he asserts that his appellate counsel performed in a constitutionally deficient manner because he did not raise the trial court's refusal to grant Cooper a continuance as an issue on appeal. The record reveals that on the day of Cooper's sentencing hearing, the State notified him that it had completed plea negotiations with Jeff McCoy, one of Cooper's codefendants, and therefore, McCoy would be available to him as a penalty phase witness. When Cooper requested a continuance to depose McCoy, the trial court denied the request.
This Court has held that analysis of a claim of ineffectiveness of appellate counsel is bounded by the following considerations:
When analyzing the merits of the claim, the criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel. Thus, this Court's ability to grant habeas relief on the basis of appellate counsel's ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel's performance was deficient because the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and second, that the petitioner was prejudiced because appellate counsel's deficiency compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

*978 If a legal issue would in all probability have been found to be without merit had counsel raised the issue on direct appeal, failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective.
Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (footnote, citations, and internal quotation marks omitted). This Court would have found this claim meritless on direct appeal. Consequently, the failure of Cooper's appellate counsel to raise the issue does not constitute ineffectiveness.
Because Cooper's attorneys were in possession of McCoy's confession to police regarding the respective roles of the three codefendants, the lack of time to depose McCoy did not harm Cooper's case. When Cooper elicited the testimony of McCoy during the hearing, McCoy related during the proceedings precisely what Cooper desiredtestimony by a witness that Cooper was acting under the domination of J.D. Walton (the third codefendant) at the time of the crimes, and that Cooper was outside the house when the second shots were fired into the victims. Because Cooper possessed McCoy's confession prior to trial, and was able to present McCoy's mitigating testimony, the trial court did not abuse its discretion in denying the motion for a continuance. See Lebron v. State, 799 So.2d 997, 1018 (Fla.2001) ("The denial of a motion for continuance is committed to the sound discretion of the trial judge."). Cooper's ineffectiveness claim is without merit because appellate counsel cannot be faulted for failing to raise a claim which would have been deemed meritless on appeal. See, e.g., Engle v. Dugger, 576 So.2d 696 (Fla.1991); Card v. State, 497 So.2d 1169 (Fla.1986).
Cooper's second basis for asserting that his appellate counsel's performance was constitutionally inadequate is that his counsel should have contended that the trial court erred in allowing the State to introduce evidence directed to Cooper's lack of remorse for his crimes. The record reflects that the trial court did, over defense counsel's objection, allow the State to present the testimony of Skalnik, who related that Cooper "laughed and thought it was funny" and "thought it was no big deal ... that he killed three people." The trial court erred. See Walton v. State, 547 So.2d 622, 625 (Fla.1989) ("This Court has consistently held that lack-of-remorse evidence cannot be presented by the State as an aggravating circumstance in its case in chief.").
While the failure of Cooper's appellate counsel to assert this point on appeal may constitute less than proper performance, it is also clear that Cooper has not established the prejudice requirement with regard to his counsel's inaction. Certainly, appellate counsel's deficiency did not compromise "the appellate process to such a degree as to undermine confidence in the correctness of the result." Rutherford, 774 So.2d at 643. It is apparent from our review of this case that the findings and result of the weighing process would not have been any different without the introduction of this lack of remorse evidence. Further, Cooper cannot demonstrate prejudice, because he introduced evidence during the penalty phase in an attempt to show his remorse for the killings, which would have opened the door to the State to introduce Skalnik's testimony regarding Cooper's lack of remorse. This claim of ineffectiveness does not warrant relief.
Cooper next contends that his appellate counsel performed inadequately by failing to assert on appeal that the State improperly commented on the absence of mitigating evidence before the jury in its penalty phase closing argument. The objectionable statements cited by Cooper are:

*979 Don't assume because you haven't heard good or bad things that it is a mitigating circumstance to consider because it is not an issue. They have not raised that as something they feel is mitigating.
....
When their big chance came to establish mitigating circumstances what did you hear? One witness.
Because Cooper did not object to these statements at trial, appellate counsel will not be deemed ineffective unless the comments constitute fundamental error. As this Court has stated in the past, fundamental error "is defined as the type of error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Downs v. Moore, 801 So.2d 906, 910-11 (Fla.2001) (internal quotation marks omitted). Because these comments merely reflect the prosecutor's view of the balance of the aggravating and mitigating circumstances, and were exceedingly brief, no fundamental error occurred.[9] Therefore, this ineffectiveness claim is without merit.
In his next ineffective assistance of appellate counsel claim, Cooper contends that his counsel failed to provide adequate representation by not asserting that the trial court's sentencing order failed to comply with section 921.141(3) of the Florida Statutes in three ways. First, Cooper argues that the trial court's failure to issue a written sentencing order contemporaneously with its oral pronouncement of sentence constitutes reversible error. While the record reflects that the trial court did wait an extended period of time after it issued its oral sentence on the record to promulgate a written order memorializing its decision, the written findings were issued prior to certification of the record to this Court for direct appeal. Therefore, any error was harmless. See Grossman v. State, 525 So.2d 833, 841 (Fla.1988).
Cooper's second and third claims regarding appellate review of the propriety of the trial court's sentencing order may be addressed in a summary fashion. The record reveals absolutely no substantive basis for Cooper's claim that the trial court improperly delegated the drafting of his sentencing order to the State. Thus, Cooper has not presented this Court with a justiciable habeas corpus claim. See Cave v. State, 529 So.2d 293, 297 (Fla.1988). Finally, Cooper's claim that the trial court failed to independently weigh the mitigating and aggravating circumstances of each victim's murder individually is contradicted by the face of the court's sentencing order itself. These claims do not warrant relief.
Likewise, Cooper's claim that his appellate counsel rendered constitutionally deficient assistance by not asserting before this Court that the instructions given to the penalty phase jury regarding the HAC and CCP aggravators were unconstitutionally vague fails. "Because [Cooper] did not object to these instructions or request legally sufficient alternative instructions, these claims are procedurally barred. Further, ... counsel cannot be deemed ineffective under the test set out in Strickland for failing to object to these instructions when this Court had previously upheld the validity of these instructions." Harvey v. Dugger, 656 So.2d 1253, 1258 *980 (Fla.1995). The jury instructions in this case did not amount to fundamental error, and therefore appellate counsel's failure to raise the issue was entirely proper.[10]
Next, Cooper asserts that his appellate counsel's performance was defective, because he failed to argue on appeal that the trial court's instructions misinformed the jury regarding the number of juror votes sufficient to recommend life imprisonment. Specifically, Cooper argues that the jury was led to believe that a vote of six to six would result in a recommendation of death, when in fact, this vote recommends life imprisonment. The trial court did, in two instances during his instructions, state that when a "majority of you" or "seven or more" of the jury members agreed, the panel could render its advisory verdict. However, these instructions were not objected to, and the trial court specifically instructed the jury as follows:
[I]f by six or more votes, the jury recommends that Richard Cooper should not be sentenced to death, your advisory sentence should be, quote, the jury advises and recommends to the Court that it impose a sentence of life imprisonment upon Richard Cooper without the possibility of parole for 25 years.
We conclude that no fundamental error occurred, and therefore Cooper's present ineffectiveness claim is meritless.
Likewise, Cooper's final two contentions are without merit. The admission of the audiotape recording of young Christopher Fridella calling 911 the night of Cooper's crimes did not constitute improper victim impact evidence, because it was independently relevant to a host of facts regarding the time and circumstances of the murders. Thus, appellate counsel did not render ineffective assistance by failing to raise this meritless claim. See Engle, 576 So.2d at 696; Card, 497 So.2d at 1169. Also, the length of Cooper's stay on death row does not constitute cruel and unusual punishment. See Rose v. State, 787 So.2d 786, 805 (Fla.2001).

Conclusion
Based upon the preceding examination and analysis of Cooper's rule 3.850 appeal and petition for habeas corpus claims, we find no basis upon which to base justifiable relief. The judgment of the circuit court is affirmed, and Cooper's habeas petition is denied.
It is so ordered.
WELLS, PARIENTE, LEWIS, and CANTERO, JJ., and SHAW, Senior Justice, concur.
PARIENTE, J., concurs specially with an opinion.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
QUINCE, J., recused.
PARIENTE, J., specially concurring.
I concur in the majority opinion and write separately only to specify the reason for my conclusion that Cooper is not entitled to relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In my view, Ring's Sixth Amendment foundation does not mandate jury sentencing. As I have previously stated, in my view the aggravating factor of the previous conviction of a violent or capital *981 felony, based in this case on contemporaneous murders on which the defendant was also found guilty beyond a reasonable doubt by a unanimous jury, satisfies the requirements of Ring and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). See Lawrence v. State, 846 So.2d 440, 456 (Fla.2003) (Pariente, J., concurring in result only); Doorbal v. State, 837 So.2d 940, 964 (Fla.2003) (Pariente, J., concurring as to the conviction and concurring in result only as to the sentence).
ANSTEAD, C.J., concurring in part and dissenting in part.
I concur in the majority opinion in all respects except for its discussion of the Ring issue.
NOTES
[1] The trial court concluded that the murders were (1) heinous, atrocious, or cruel (HAC); (2) cold, calculated, and premeditated (CCP); (3) committed to avoid arrest; and (4) committed for pecuniary gain. Additionally, (5) Cooper had previously been convicted of violent felonies. While the trial court concluded that (6) the murders were committed during the course of a kidnapping, this Court struck this aggravator on appeal. See Cooper, 492 So.2d at 1061.
[2] Cooper contends that (1) the State's misconduct before and during trial with regard to Paul Skalnik, a "jailhouse informant," unconstitutionally prejudiced his case; (2) the State did not properly comply with his public records requests under section 119.07 of the Florida Statutes; (3) his attorneys rendered constitutionally deficient representation at trial due to an actual conflict of interest or incompetence; (4) his attorneys provided him ineffective assistance of counsel by failing to present substantive evidence in mitigation; and (5) the circuit court erred in summarily denying various claims raised in his original rule 3.850 motion.
[3] Cooper avers that his appellate counsel's performance was constitutionally deficient because he failed to submit to this Court that (1) the trial court erroneously denied Cooper's motion for a continuance during the sentencing proceeding; (2) the trial proceedings were tainted by the State's introduction of testimony regarding Cooper's lack of remorse for the killings; (3) the State tainted the proceedings when it made comments during its penalty phase closing argument regarding Cooper's failure to submit evidence in mitigation; (4) the trial court's failure to promulgate a timely written order constituted reversible error; (5) the penalty phase jury instructions were unconstitutionally vague; (6) prosecutorial statements improperly limited the scope of the jury's deliberations, and prejudicially inflamed the passions of the jury; (7) the trial court improperly allowed the submission of victim impact testimony to the jury; (8) Florida's death penalty scheme is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny; (9) comments by the State and trial court to the jury unconstitutionally degraded the jury's perception of its role; (10) the jury was improperly instructed regarding the number of votes necessary to recommend life imprisonment; (11) the penalty phase jury instructions unconstitutionally shifted the burden of proof to Cooper to show that life was appropriate; and (12) the duration of Cooper's wait for the imposition of his death sentence constitutes cruel and unusual punishment in violation of the United States Constitution and various international agreements.
[4] As our review of the record on appeal causes us to conclude that Koch's pretrial investigation and cross-examination of Skalnik at trial were both adequate and effective, Cooper's allegations of ineffective assistance of counsel impugning his attorney's method of addressing Skalnik's testimony must fail. See Valle v. State, 778 So.2d 960, 965 (Fla. 2001) (noting that to prevail on an ineffectiveness claim, a defendant must show "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment").
[5] In connection with this ineffectiveness claim, it should be noted that this Court continues to hold that the presentation of testimony during postconviction proceedings of more favorable mental health experts does not automatically establish that the original evaluations were insufficient. See Carroll v. State, 815 So.2d 601, 618 (Fla.2002); see also Gaskin v. State, 822 So.2d 1243, 1250 (Fla.2002) (holding that "counsel's mental health investigation is not rendered incompetent merely because the defendant has now secured the testimony of a more favorable mental health expert").
[6] Cooper contends that Florida's capital sentencing scheme violates the United States and Florida Constitutions under the United States Supreme Court's holding in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court addressed a similar contention in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002) and denied relief. We conclude that Cooper is likewise not entitled to relief on this claim.
[7] Cooper has chosen to contest the trial court's summary denial of various claims, by contending, without specific reference or supportive argument, that the "lower court erred in its summary denial of these claims." We find speculative, unsupported argument of this type to be improper, and deny relief based thereon. See Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues....").
[8] As noted in our discussion of Cooper's 3.850 appeal, the claim that Florida's death penalty scheme is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny provides no relief here. See Bottoson v. Moore, 833 So.2d at 695; King v. Moore, 831 So.2d at 144-45. Likewise, Cooper's claim that the trial court's jury instructions unconstitutionally denigrated the advisory role of the jury during the penalty phase is meritless. This Court has also rejected Cooper's burden-shifting claim numerous times. See, e.g., Freeman v. State, 761 So.2d 1055, 1072 (Fla.2000). Thus we deny relief based thereon.
[9] For the same reason, the isolated statements Cooper has identified regarding the jury placing themselves in the victims' shoes, and the proper level of sympathy and mercy for Cooper in sentencing, do not rise to the level of fundamental error. Thus, appellate counsel was not ineffective for failing to argue that these unobjected-to comments vitiated the entire trial.
[10] Cooper's claim that the trial court improperly utilized the same set of facts to serve as a basis for instructing the jury regarding the HAC and prior commission of a violent felony aggravators is also without merit. While the multiple murders justified instruction on the prior violent felony aggravating circumstance, it was the manner of the commission of the murders which was the basis for the HAC instruction.