853 So.2d 1095 (2003)
Charles STRONG, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D01-3589.
District Court of Appeal of Florida, Third District.
August 13, 2003.
Rehearing Denied September 5, 2003.
*1096 Bennett H. Brummer, Public Defender, and Billie Jan Goldstein, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Thomas C. Mielke, Assistant Attorney General, for appellee.
Before COPE, FLETCHER and WELLS, JJ.
COPE, J.
Charles Strong appeals his convictions of sexual battery and kidnapping. We conclude that the trial court acted within its discretion in giving a jury instruction on subsection 794.022(5), Florida Statutes (2001). That statute addresses the relevance of prophylactic use to the issue of consent in a sexual battery prosecution.

I.
The victim testified that an assailant (who turned out to be defendant-appellant Strong) grabbed her from behind when she was walking by some woods near her home after dark. He forced her at knifepoint to go to a nearby clearing. He kept her face covered with a cloth for part of the time and struck her in the forehead when she attempted to lift her head. The defendant produced a condom and put it on, but it came off when he was unable to maintain an erection. The defendant then demanded oral sex.
The defendant attempted intercourse a second time. The victim had a condom in her purse and, fearing disease, produced it for the defendant to use. The defendant was again unsuccessful and the condom again came off.
The defendant tied the victim's hand with some type of elastic which seemed like surgical tubing. The defendant told the victim that they were going to go to his boat and forced the victim to accompany him down a pathway to the vicinity of the beach. There the defendant accomplished intercourse without a condom.
The victim asked the defendant to let her go, but the defendant said he could not let her go because she probably would go to the police. The victim had been able to untie her hands but the defendant tied them again. The victim concluded that the defendant would try to kill her. She decided that she had to keep talking and try to befriend the defendant in hopes that he would let her go or she would have an opportunity to escape. This went on for about two hours.
Eventually someone came down the pathway, carrying a flashlight. It turned out to be the defendant's wife, who had come to look for him because he had not met her as he was supposed to do after work. She became very upset when she saw the defendant with the victim. The defendant walked away from the victim to talk to his wife, and the victim escaped. She went to a nearby business where a friend worked, who escorted her home. Because it had been dark and her face had been covered part of the time, the victim was only able to give a general description of height and hair type of the defendant, but was never able to identify him from a photograph or in court.
By prompt investigation and good luck, the next day the police were able to identify the defendant as the likely suspect. He was interviewed at the police station and admitted the sexual encounter. His account closely corresponded to that of the *1097 victim, except that the defendant told the police the entire encounter was consensual and that he had not used a knife or any force.
Photographs of the victim revealed a small bruise on her forehead, a larger bruise on her chin, a small cut or abrasion on her neck where the victim said the knife was held, and bruises on her upper arms where the victim said the defendant had grasped her. She also had scratches on her legs from walking through the woods.
The victim testified at trial. The defendant's statement to the police came in through the police detective, including the defendant's claim that the sexual encounter was consensual.[*] From his convictions, the defendant appeals.

II.
The trial court granted the State's request to instruct the jury on subsection 794.022, Florida Statutes (2001), which provides:
(5) An offender's use of a prophylactic device, or a victim's request that an offender use a prophylactic device, is not by itself relevant to either the issue of whether or not the offense was committed or the issue of whether or not the victim consented.
(Emphasis added).
The court agreed to read subsection (5) to the jury verbatim, and to emphasize the words, "by itself." The defense objected to this instruction.
While much of the defense closing argument dealt with other issues, defense counsel did address the use of condoms including the following:
And it's certainly inconsistent with performing these sexual acts against her will. You know, sounds like it's not against her will. Oh, you finished with that condom, oh, I got one here. Here you go.
Doesn't sound like rape to me.
TR. 512.
On appeal, the defendant argues that the special jury instruction should not have been given. The defense points out that section 794.022, Florida Statutes, is entitled "Rules of Evidence." Subsection (5) speaks in terms of relevancy, an evidentiary concept.
The defense argues that in a companion part of section 794.022, subsection (4) addresses consent where the victim suffers mental incapacity or defect. Id. § 794.022(4). That provision states:
(4) When consent of the victim is a defense to prosecution under s. 794.011, evidence of the victim's mental incapacity or defect is admissible to prove that the consent was not intelligent, knowing, or voluntary, and the court shall instruct the jury accordingly.
(Emphasis added). The defendant points out that the final part of subsection (4) creates a mandatory jury instruction. The defense argues that since there is not similar provision in subsection (5), this reflects a legislative intent that there be no jury instruction regarding subsection (5).
We acknowledge that the legislature has treated subsections (4) and (5) differently, but cannot agree with the defendant's argument. The legislature's silence on the issue of a jury instruction in subsection (5) simply leaves the question of a jury instruction within the sound discretion of the trial court. If the legislature wished to prohibit an instruction to the jury, it would have said so.
*1098 The defense argues that subsection (5) was added to Florida's Rape Shield Law after an incident which occurred in Texas several years ago, where a Texas grand jury declined to indict a defendant because the rape victim had provided the defendant with a condom. See William R. Eleazar & Glen Weissenberger, Florida Evidence 2003 Courtroom Manual 211-12 (2003); Kathryn Abrams, Sex Wars Redux:Agency and Coercion in Feminist Legal Theory, 95 Columbia L.Rev. 304, 363-64 & n. 233 (1995); Sean P. Lafferty & Decio C. Rangel, Jr., Review of Selected 1994 California Legislation, 26 Pacific L.J. 419, 419-20 & n. 5 (1994).
In our view, that background strengthens, rather than weakens, the case for instructing the jury. Rather than rely on the (possibly incorrect) intuitive reaction of the jurors, it is entirely appropriate to tell the jurors what Florida law is on this issue. Under the statute, condom use is a factor which can be argued and considered, but is not dispositive standing alone and must be considered in light of the other facts of the case.
Instructions quoting an applicable statute have been upheld. Bayer v. State, 788 So.2d 310, 313 (Fla. 5th DCA 2001); Castaline v. State, 645 So.2d 561, 562 (Fla. 3d DCA 1994).
"What is important is that sufficient instructions ... be given as adequate guidance to enable a jury to arrive at a verdict based upon the law as applied to the evidence before them." State v. Bryan, 287 So.2d 73, 75 (Fla.1973).
"A trial court has wide discretion in instructing the jury, and the court's decision regarding the charge to the jury is reviewed with a presumption of correctness on appeal." Chesnoff v. State, 840 So.2d 423, 426 (Fla. 5th DCA 2003) (citing Carpenter v. State, 785 So.2d 1182, 1199-1200 (Fla.2001)).
The defense relies on Fenelon v. State, 594 So.2d 292 (Fla.1992) and Whitfield v. State, 452 So.2d 548 (Fla.1984). Those cases are distinguishable from this one. Fenelon dealt with an instruction that flight could be considered as reflecting consciousness of guilt. Whitfield involved an instruction that a refusal to submit to fingerprinting was a circumstance reflecting consciousness of guilt. In both cases there was no statute involved, and the common experience of the jurors could be trusted to tell them that fleeing or refusing to be fingerprinted can be matters reflecting a consciousness of guilt.
Sexual battery, however, is something about which most jurors will have little or no firsthand knowledge. The statute appears to have been adopted to counteract some laypersons' intuitive belief that condom use automatically signifies consent. We conclude that the instruction was proper and agree with Judge Garcia's ruling.

III.
The defendant was sentenced as a Prison Release Reoffender. For preservation purposes, he argues that the statute is unconstitutional, but acknowledges that the constitutional issues have been decided adversely to his position in Grant v. State, 770 So.2d 655 (Fla.2000), and State v. Cotton, 769 So.2d 345 (Fla.2000). We reject this argument on authority of those cases.
Finally, the defendant argues that there was fundamental error in an unobjected-to portion of the State's closing argument. When the arguments are read as a whole, they all appear to be either fair comment on the evidence presented or fair response to the arguments made by the defense in closing. Even if it could be said that any isolated comment was objectionable, no contemporaneous objection was *1099 made and there was nothing that would amount to fundamental error. See Cooper v. State, 28 Fla. L. Weekly S497, S500, S501 n. 9, ___ So.2d ___, ___, ___ n. 9, 2003 WL 21467509 (Fla. June 26, 2003).
Affirmed.
NOTES
[*] The defendant did not testify at trial.