547 So.2d 622 (1989)
Jason Dirk WALTON, Appellant,
v.
STATE of Florida, Appellee.
No. 69389.
Supreme Court of Florida.
June 29, 1989.
Rehearing Denied September 7, 1989.
*623 James Marion Moorman, Public Defender, and Douglas S. Connor, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Jason Dirk Walton appeals his death sentence imposed in a resentencing proceeding for three counts of first-degree murder. We previously affirmed Walton's convictions but remanded this cause for a new sentencing hearing. Walton v. State, 481 So.2d 1197 (Fla. 1985). We have jurisdiction[*] and affirm the trial court's sentence of death.
Two codefendants, Terry Van Royal, Jr., and Richard Cooper, were also convicted of these murders. Van Royal was sentenced to death, but his sentence was vacated because the trial judge failed to justify his reasons for imposing the death sentence in accordance with section 921.141(3), Florida Statutes (1981). Van Royal v. State, 497 So.2d 625 (Fla. 1986). We affirmed Cooper's conviction and death sentence in Cooper v. State, 492 So.2d 1059 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1330, 94 L.Ed.2d 181 (1987). Jeffrey McCoy, the fourth participant in this incident, pleaded guilty to three counts of first-degree murder and agreed to testify against the others in exchange for life imprisonment with a mandatory minimum twenty-five year sentence.
The facts at resentencing revealed that an eight-year-old boy summoned the police to a home, and, upon arrival, the police found three dead men lying face down on the living room floor, their wrists bound with duct tape. The boy was unharmed but had been bound and locked in the bathroom during the commission of the crimes. Each of the victims had been shot from a distance of three to six feet, and shotgun wounds were the sole causes of death. At the time of Walton's arrest, he was living with the ex-wife of one of the victims, who was also the mother of the eight-year-old boy. The boy was present at the time of Walton's arrest.
The state presented Walton's confession to the jury. There, he admitted being present at the time of the homicides, denied any part in the shootings, and stated that he, Richard Cooper, and Terry Van Royal, Jr., went to the residence to rob the victims because he had heard that one of them had a lot of money and cocaine. Further, Walton indicated that they entered the residence, with each carrying a gun. All three victims were brought into the living room, the young boy was placed in the bathroom, and the apartment was searched for drugs and money. Afterwards, Walton stated that he turned on the television full blast to prevent the neighbors from hearing the victims scream and that he heard shotgun blasts as he left. Later, he acknowledged that his younger brother, Jeffrey McCoy, also participated in the robbery.
The state introduced a taped statement given by Jeffrey McCoy. McCoy stated that the plan to rob the victims had first been discussed about two weeks prior to the incident; that Walton had complained that one of the victims had stolen some marijuana from his trailer; that Walton believed the victims had a great deal of money and cocaine; that the four carefully devised a plan concerning the robbery, making sure that the child was placed in the bathroom so he would not witness the robbery and that it took place on a rainy night to prevent tire tracks from being left behind. He testified that the participants *624 decided to bring weapons, but stated that the purpose of the weapons was to scare the victims, preventing resistance to the robbery. To his knowledge, no plan to shoot anyone existed. McCoy testified that Walton and the others entered the house and gathered each of the victims into the living room and, at Cooper's direction, McCoy taped the victims' wrists behind their backs. McCoy then left the house to start the car and wait. Upon starting the car, he heard a series of shots. After returning to the car, Cooper gestured to McCoy that the victims were dead.
Another state witness testified that Walton was experiencing problems in his relationship with the ex-wife of one of the victims and that Walton had once said that "the only way he could get [the victim] off his back was to waste him." The state presented a psychiatrist's testimony, indicating that the boy suffered a post-trauma stress reaction to the incident and that it would not be in the boy's best interest to appear in court and testify.
The defense presented evidence that Walton had never been convicted of a crime. A coworker testified that Walton was quiet, kind, considerate, and nonviolent. Further, she visited him at the prison and determined that he had adjusted very well and would pose no threat of violence to others. A friend of the family testified that Walton was a friendly, nonviolent person, who was a follower rather than a leader; that Walton had been in the army and was honorably discharged; and that Walton had a positive attitude toward prison. The prosecution questioned these two witnesses about whether Walton had shown any remorse for the homicides. The defense also presented testimony from Walton's mother, who stated that Walton had a normal childhood; that he had joined the army at age seventeen, receiving awards and an honorable discharge; and that he had adjusted very well to incarceration and would not be a threat to anyone.
In rebuttal, the state presented a witness who testified that he had purchased marijuana from Walton on three occasions and that he had seen Cooper carrying a fiftypound bale of marijuana towards Walton's house. Another witness testified that he had seen Walton sell marijuana; that Walton never expressed any remorse for his actions; and that Walton purchased a truck owned by one of the victims from that victim's father after the murders.
In the resentencing proceeding, the jury recommended a sentence of death. The trial judge found the following aggravating factors: (1) the murders were committed during the commission of a robbery and burglary; (2) the murders were committed for pecuniary gain; (3) the murders were committed in an especially heinous, atrocious, or cruel fashion; (4) the murders were committed in a cold, calculated, and premeditated manner; and (5) the murders were committed for the purpose of avoiding a lawful arrest. The trial judge noted that the first two aggravating circumstances would be considered as one. The trial judge found no mitigating factors and imposed the death sentence.
In this appeal, Walton raises the following six issues: (1) the trial judge erred by allowing the prosecution to prevent an expert psychiatrist to testify concerning the crime's impact upon the victim's eight-year-old son; (2) the trial judge erred in admitting evidence of Walton's actions after the homicides and alleged lack of remorse; (3) the trial court erred in permitting, as rebuttal to the statutory mitigating circumstance of no prior criminal history, evidence of Walton's alleged prior drug offenses not resulting in convictions; (4) the prosecutor made improper remarks during closing argument; (5) the trial judge improperly instructed the jury concerning the aggravating circumstances; and (6) the trial judge erred by failing to find applicable mitigating factors and erroneously finding the following aggravating factors: that the murders were committed in an especially heinous, atrocious, or cruel fashion; that the murders were committed in a cold, calculated, and premeditated manner; and that the murders were committed for the purpose of avoiding arrest.
In this first point, Walton contends that the trial court erred in allowing a *625 psychiatrist to testify about the condition of the victim's eight-year-old son, who was in the house at the time of the murders. He asserts that this testimony was presented solely to establish a nonstatutory aggravating factor. We agree. Although this evidence established why the boy did not testify, it was erroneously admitted because it constituted a nonstatutory aggravating circumstance. See Elledge v. State, 346 So.2d 998 (Fla. 1977). After examining the entire record, we find that this erroneous admission was harmless. See, e.g., Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982); Elledge. The boy's presence and involvement were already before the jury. The jurors knew that he was present at the scene when his father was killed, that he called the police, and that he was living with Walton at the time of Walton's arrest. Because of his substantial involvement, it would be normal to conclude that the incident substantially affected him. The psychiatrist's testimony merely stated the obvious conclusion. Given the total circumstances, including the confessions and the fact that three execution-killings occurred, we find beyond a reasonable doubt that this testimony did not affect the jury's recommendation. It must be noted that we do not condone the prosecutor's conduct and this conduct could be reversible error under different circumstances.
In his second point, Walton argues that the state improperly presented evidence concerning lack of remorse as a nonstatutory aggravating circumstance. In response, the state asserts that Walton's counsel initiated the questioning of defense witnesses concerning remorse and expressly asked one witness "what if any remorse" had Walton shown, thus opening the door concerning this issue. This Court has consistently held that lack-of-remorse evidence cannot be presented by the state as an aggravating circumstance in its case in chief, see Robinson v. State, 520 So.2d 1 (Fla. 1988); Patterson v. State, 513 So.2d 1263 (Fla. 1987); Pope v. State, 441 So.2d 1073 (Fla. 1983); Jackson v. Wainwright, 421 So.2d 1385 (Fla. 1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983), but that does not mean the state is unable to present this evidence to rebut nonstatutory mitigating evidence of remorse presented by a defendant. See Agan v. State, 445 So.2d 326 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984).
In his third point, Walton contends that the state can only rebut a defendant's evidence of no significant history of prior criminal activity with evidence of convictions. We disagree. Once a defendant claims that this mitigating circumstance is applicable, the state may rebut this claim with direct evidence of criminal activity. See Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979). We find that the evidence of Walton's drug activity was admissible in rebuttal.
We find appellant's fourth claim concerning the prosecutor's prejudicial comments during closing argument to be without merit. We note that, with the exception of one comment, the defense failed to object, request curative instructions, or move for a mistrial.
With regard to point five, Walton argues that the trial court gave improper jury instructions concerning aggravating circumstances, thus diminishing the reliability of the resentencing proceeding. We disagree. It is important to note that Walton's counsel never objected to the instructions. In fact, both defense counsel and the state stipulated to the proposed instructions. Absent fundamental error, failure to object to the jury instructions at trial precludes appellate review. See Bottoson v. State, 443 So.2d 962 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984); Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). We find no fundamental error in the instructions. *626 Taken as a whole, they demonstrate that the burden of proving the aggravating circumstances rested with the state.
With regard to point six, we find no merit in Walton's claim.
Accordingly, for the reasons expressed, we affirm the sentence of death.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW and GRIMES, JJ., concur.
McDONALD and BARKETT, JJ., concur in result only.
KOGAN, J., dissents.
NOTES
[*] Art. V, § 3(b)(1), Fla. Const.