# Supreme Court of Florida

_____

No. SC15-1756
_____

**MICHAEL DUANE ZACK, III,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC16-1090
_____

**MICHAEL DUANE ZACK, III,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[June 15, 2017]

PER CURIAM.

Michael Duane Zack, III, appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ

of habeas corpus.  We have jurisdiction.  <u>See</u> art. V, § 3(b)(1), (9), Fla. Const.  For the reasons that follow, we affirm the denial of postconviction relief and deny the habeas petition.

## FACTS

On June 25, 1996, Michael Zack was indicted for the sexual assault, robbery, and first-degree murder of Ravonne Smith.  We described the facts of the case on direct appeal as follows:

> Although the murder of Smith took place on June 13, 1996, the chain of events which culminated in this murder began on June 4, 1996, when Edith Pope (Pope), a bartender in Tallahassee, lent her car to Zack.  In the weeks prior, Zack had come to Pope's bar on a regular basis.  He generally nursed one or two beers and talked with Pope; she never saw him intoxicated.  He told her that he had witnessed his sister murder his mother with an axe.  As a result, Pope felt sorry for Zack, and she began to give him odd jobs around the bar.  When Zack's girlfriend called the bar on June 4 to advise him that he was being evicted from her apartment, Pope lent Zack her red Honda automobile to pick up his belongings.  Zack never returned.
> From Tallahassee, Zack drove to Panama City where he met Bobby Chandler (Chandler) at a local pub.  Over the next several days, Zack frequented the pub daily and befriended Chandler.  Chandler, who owned a construction subcontracting business, hired Zack to work in his construction business.  When Chandler discovered that Zack was living out of a car (the red Honda), he invited Zack to live with him temporarily.  On the second night at Chandler's, Zack woke up screaming following a nightmare.  Chandler heard Zack groan words which sounded like "stop" or "don't."  Although Chandler questioned him, Zack would not discuss the nightmare.  Two nights later, on June 11, 1996, Zack left Chandler's during the night, stealing a rifle, a handgun, and forty-two dollars from Chandler's wallet.  Zack drove to Niceville, and on the morning of June 12, 1996, pawned the guns for $225.

From Niceville, Zack traveled to Okaloosa County and stopped at yet another bar. At this bar, Zack was sitting alone drinking a beer when he was approached by Laura Rosillo (Rosillo). The two left the bar in the red Honda and drove to the beach, reportedly to use drugs Zack said he possessed. Once on the beach, Zack attacked Rosillo and beat her while they were still in the Honda. He then pulled Rosillo from the car and beat her head against one of the tires. Rosillo's tube top was torn and hanging off her hips. Her spandex pants were pulled down around her right ankle. The evidence suggests she was sexually assaulted; however, the sperm found in Rosillo's body could not be matched to Zack. He then strangled her, dragged her body behind a sand dune, kicked dirt over her face, and departed.

Zack's next stop on this crime-riddled journey was Dirty Joe's bar located near the beach in Pensacola. He arrived there on the afternoon of June 13, 1996, and met the decedent, Ravonne Smith. Throughout the afternoon, Smith, a bar employee, and Zack sat together in the bar talking and playing pool or darts. The bar was not very busy, so Smith spent most of her time with Zack. Both bar employees and patrons testified that Zack did not ingest any significant amount of alcohol and that he did not appear to be intoxicated. In the late afternoon, Smith contacted her friend Russell Williams (Williams) and invited him to the bar because she was lonely. Williams arrived at the bar around 5:30 p.m. Prior to leaving the bar around 7 p.m., Smith called her live-in boyfriend, Danny Schaffer, and told him she was working late. Smith, Williams, and Zack then left the bar and drove to the beach where they shared a marijuana cigarette supplied by Zack. Afterwards, they returned to the bar and Williams departed. Zack and Smith left the bar together sometime around 8 p.m. and eventually arrived at the house Smith shared with her boyfriend.

Forensic evidence indicates that immediately upon entering the house Zack hit Smith with a beer bottle causing shards of glass and blood to spray onto the living room love seat and two drops of blood to spray onto the interior doorframe. Zack pursued Smith down the hall to the master bedroom leaving a trail of blood. Once in the bedroom Zack sexually assaulted Smith as she lay bleeding on the bed. Following the attack Smith managed to escape to the empty guest bedroom across the hall. Zack pursued her and beat her head against the bedroom's wooden floor. Once he incapacitated Smith,

Zack went to the kitchen where he got an oyster knife.  He returned to the guest bedroom where Smith lay and stabbed her in the chest four times with the knife.  The four wounds were close together in the center of Smith's chest.  Zack went back to the kitchen, cleaned the knife, put it away, and washed the blood from his hands.  He then went back to the master bedroom, placed Smith's bloody shirt and shorts in her dresser drawer, stole a television, a VCR, and Smith's purse, and placed the stolen items in Smith's car.

During the night, Zack drove Smith's car to the area where the red Honda was parked.  He removed the license plate and several personal items from the Honda then moved it to a nearby lot.  Zack returned to Panama City in Smith's car and attempted to pawn the television and VCR.  Suspecting the merchandise was stolen, the shop owners asked for identification and told Zack they had to check on the merchandise.  Zack fled the store and abandoned Smith's car behind a local restaurant.  Zack was apprehended after he had spent several days hiding in an empty house.

After he was arrested, Zack confessed to the Smith murder and to the Pope and Chandler thefts.  Zack claimed he and Smith had consensual sex and that she thereafter made a comment regarding his mother's murder.  The comment enraged him, and he attacked her.  Zack contended the fight began in the hallway, not immediately upon entering the house.  He said he grabbed a knife in self-defense, believing Smith left the master bedroom to get a gun from the guest bedroom.

Zack v. State (Zack I), 753 So. 2d 9, 13-14 (Fla. 2000) (footnotes omitted).  A jury found Zack guilty on all counts on September 15, 1997.  Id. at 12.

After the penalty phase hearing, the jury recommended a sentence of death by a vote of eleven to one.  Id.  Following the jury's recommendation, the trial court sentenced Zack to death on November 14, 1997.[1]  On direct appeal, Zack

---

1. The trial judge found the following six aggravators to support the death sentence:

raised twelve issues.[2]  Id. at 16 n.5.  We affirmed the convictions and death

sentence.  Id. at 26.  On October 2, 2000, the Supreme Court denied certiorari

review.  Zack v. Florida, 531 U.S. 858 (2000).

_____

> (1) the defendant was convicted of a capital felony while under a
> sentence of felony probation; (2) the crime was committed in
> conjunction with a robbery, sexual battery, or burglary; (3)
> the defendant committed the crime to avoid lawful arrest; (4) the
> defendant committed the crime for financial gain; (5) the crime was
> especially heinous, atrocious, [or] cruel; and (6) the crime was
> committed in a cold, calculated, and premeditated manner.

Zack I, 753 So. 2d at 12-13.  The trial court assigned little weight to the following
four mitigators:

> (1) the defendant committed the crime while under an extreme mental
> or emotional disturbance; (2) the defendant was acting under extreme
> duress; (3) the defendant lacked the capacity to appreciate the
> criminality of his conduct or to conform his conduct to the
> requirements of law; and (4) nonstatutory mitigating factors of
> remorse, voluntary confession, and good conduct while incarcerated.
> Zack's age was not considered a mitigating factor.

Id. at 13.

> 2.  Zack raised the following claims on direct appeal:

> (1) the court erred in admitting Williams[v. State, 110 So. 2d 654 (Fla.
> 1959),] rule evidence; (2) the court erred in denying a motion for
> judgment of acquittal on the sexual battery charge; (3) the trial court
> erred in denying the motion for judgment of acquittal on the robbery
> charge; (4) the trial court erred in instructing the jury on felony
> murder based upon a burglary; (5) the sentencing order failed to
> consider all of the mitigating evidence presented; (6) the trial court
> erred in finding that the murder was committed to avoid or prevent a
> lawful arrest; (7) the trial court erred in finding that the murder was
> committed in a cold, calculated and premeditated manner; (8) the trial

- 5 -

On October 18, 2002, Zack filed his first amended 3.851 motion in the trial court, raising six claims. While Zack's motion was pending, the Supreme Court decided Atkins v. Virginia, 536 U.S. 304 (2002), which held that the execution of an intellectually disabled person is cruel and unusual punishment in violation of the Eighth Amendment. The trial court denied Zack's rule 3.851 motion on July 14, 2003. Zack raised six issues before this Court on appeal.[3] Zack v. State (Zack II), 911 So. 2d 1190 (Fla. 2005). This Court affirmed the trial court's order and noted that the "evidence in this case shows Zack's lowest I.Q. score to be 79." Id.

---

court erred in using victim impact evidence; (9) the trial court erred in admitting the rebuttal evidence from Candice Fletcher; (10) the trial court erred by failing to give Zack's proposed instruction on the role of sympathy; (11) the trial court erred in retroactively applying the aggravating factor of a murder committed while on felony probation; and (12) the trial court erred in refusing to admit a family photo during the penalty phase.

Zack I, 753 So. 2d at 16 n.5.

3. On postconviction appeal, Zack raised the following issues: (1) trial counsel was ineffective for failing to challenge the DNA evidence presented by the State; (2) counsel was ineffective because he failed to prepare Zack to testify at trial; (3) counsel was ineffective because he made prejudicial remarks to the jury in the opening statement and closing argument; (4) the trial court erred in summarily denying claims raised in his motion for postconviction relief involving Zack's right to a Frye[v. United States, 293 F. 1013 (D.C. Cir. 1923),] hearing and the constitutionality of the death sentence under Atkins; (5) that Florida's capital sentencing scheme is unconstitutional under Ring[v. Arizona, 536 U.S 584 (2002)]; and (6) collateral counsel was ineffective. Zack II, 911 So. 2d at 1197.

at 1201. The Court also denied relief on Zack's petition for writ of habeas corpus, filed on February 12, 2004. Id. at 1203.

Zack filed a successive postconviction motion on December 1, 2004, raising an Atkins claim. The trial court denied the claim without an Atkins hearing, finding that after a review of the expert trial testimony none had found Zack's I.Q. to be near the required statutory figure of 70 in order to establish intellectual disability. This Court affirmed the trial court's denial. In its order, this Court relied on Cherry v. State, 781 So. 2d 1040 (Fla. 2000), and held that "Zack has not provided any new evidence of [intellectual disability] and previous evidence demonstrates that his I.Q. was well above the statutory figure of 70 or below."

On March 4, 2005, Zack filed a second petition for a writ of habeas corpus based upon the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004). This Court denied the petition on October 6, 2005. Zack v. Crosby, 918 So. 2d 240 (Fla. 2005).

Zack also filed a federal habeas petition that included an Atkins claim. Zack v. Crosby, 607 F. Supp. 2d 1291 (N.D. Fla. 2008). All claims not based on Atkins were dismissed with prejudice as untimely. Id. at 1295. Zack's Atkins claim was denied with prejudice on the merits on March 26, 2009. In its order, the court found that the record refuted Zack's allegation that he is intellectually disabled and held that the record uniformly concluded that Zack's I.Q. was significantly above

the minimum threshold for intellectual disability. The Eleventh Circuit, in an en banc opinion, affirmed the dismissal of many of the claims in the habeas petition as untimely. Zack v. Tucker, 704 F.3d 917 (11th Cir. 2013). The Supreme Court denied certiorari review on October 7, 2013. Zack v. Crews, 134 S. Ct. 156 (2013).

On May 26, 2015, Zack filed a second successive postconviction motion raising a claim of intellectual disability based on Hall v. Florida, 134 S. Ct. 1986 (2014). The trial court summarily denied the motion on July 8, 2015. Zack now appeals from the circuit court's denial of relief, arguing that the court erred in (1) summarily denying Zack an evidentiary hearing on his intellectual disability claim and (2) dismissing Zack's motion on the basis that his I.Q. was too high for an Atkins hearing without considering other evidence as required by Hall.

## ANALYSIS

Zack's first claim is based on the trial court's summary denial of his motion pursuant to a rule of law that has now been found unconstitutional under Hall. During the pendency of this case, we determined that Hall applies retroactively as a development of fundamental significance. Walls v. State, 213 So. 3d 340, 346 (Fla. 2016).

A postconviction court's decision on whether to grant an evidentiary hearing on a claim is a pure question of law, reviewed de novo. Mann v. State, 112 So. 3d

1158, 1162 (Fla. 2013). A claim may be summarily denied if it is legally insufficient or positively refuted by the record. Id. at 1161. To prevail on a claim of intellectual disability, a defendant must establish three elements: (1) significantly subaverage general intellectual functioning, (2) existing concurrently with deficits in adaptive behavior, and (3) manifesting prior to age 18. § 921.137, Fla. Stat. (2016); Fla. R. Crim. P. 3.203.

Hall recognizes that intellectual disability "is a condition, not a number." Hall, 134 S. Ct. at 2001. In a recent opinion, we found that Hall requires courts to consider all three prongs of intellectual disability in tandem and that no single factor should be dispositive of the outcome. See Oats v. State, 181 So. 3d 457, 459 (Fla. 2015). However, Hall also states that a "defendant must be able to present additional evidence of intellectual disability" where "a defendant's I.Q. test score falls within the test's acknowledged and inherent margin of error." Hall, 134 S. Ct. at 2001. Generally, the standard error of measurement is approximately five points. Id. at 1998 (citing to Diagnostic and Statistical Manual of Mental Disorders 28 (rev. 3d ed. 1987)). Thus, an "I.Q. score of 70 is considered to represent a band or zone of 65 to 75." Id.

The trial court correctly found the significantly subaverage intellectual functioning prong dispositive of Zack's intellectual disability claim based on

Zack's scores prior to age 18, which were all over 75. At the Huff[4] hearing, Zack presented his full range of scores, as well as evidence of adaptive deficits before age 18. The record demonstrates five I.Q. scores for Zack: a score of 92 in 1980 when Zack was 11 years old, and four scores after Zack turned 18—84 and 86 in 1997 at 27 years of age, 79 in 2002, and 80 in 2015. While a holistic hearing is required, defendants must still be able to meet the first prong of Hall. Because Zack's current score is well above 75, and there are no scores in his history below 75, it is unlikely that he would ever be able to satisfy the significantly subaverage intellectual functioning prong. Accordingly, we affirm the trial court's summary denial of Zack's intellectual disability claim.

Zack's second claim is that the trial court erred in dismissing his motion on the basis that his I.Q. was too high for an Atkins hearing without considering other evidence as required by Hall. In reviewing the trial court's determination that Zack is not intellectually disabled, "this Court examines the record for whether competent, substantial evidence supports the determination of the trial court." State v. Herring, 76 So. 3d 891, 895 (Fla. 2011). We do not "reweigh the evidence or second-guess the circuit court's findings as to the credibility of witnesses."

---

4. Huff v. State, 622 So. 2d 982 (Fla. 1993).

Brown v. State, 959 So. 2d 146, 149 (Fla. 2007). However, questions of law are reviewed de novo. Herring, 76 So. 3d at 895.

We find that the trial court's determination that Zack did not satisfy the significantly subaverage intellectual functioning prong is supported by competent, substantial evidence. As previously mentioned, Zack provided several I.Q. scores that were all well outside the standard error of measurement. While Zack argues that Hall requires the trial court to consider other evidence, a defendant's scores must first fall within the test's acknowledged and inherent margin of error. Hall, 134 S. Ct. at 2001. Here, all of the scores presented—92, 84, 86, 79, and 80—are outside of the test's margin of error and the presentation of evidence regarding the other two prongs do not cure Zack's inability to satisfy the first. Consequently, we affirm the trial court's determination.

## PETITION FOR WRIT OF HABEAS CORPUS

In his petition for habeas corpus relief, Zack asserts that his death sentence is unconstitutional under Hurst v. Florida, 136 S. Ct. 616 (2016). In Hurst v. Florida, the Supreme Court found that a jury must make a specific factual finding with regard to the existence of mitigating or aggravating circumstances supporting a death sentence in order to preserve the Sixth Amendment right to a jury trial. Id. at 622. We have interpreted Hurst v. Florida, an extension of Ring v. Arizona, 536 U.S. 584 (2002), to require a jury to unanimously find each aggravating factor, that

- 11 -

the aggravating factors are sufficient to warrant death, and that the aggravating factors outweigh the mitigation. See Hurst v. State (Hurst), 202 So. 3d 40, 57, 66 (Fla. 2016), cert. denied, No. 16-998 (U.S. May 22, 2017). However, Zack's first-degree murder conviction and sentence of death were final in 2000, before the Supreme Court decided Ring. Therefore, Zack is not entitled to Hurst relief because Hurst does not apply retroactively to cases that were final before Ring was decided. See Asay v. State, 210 So. 3d 1, 22 (Fla. 2016). Accordingly, we deny relief on this claim.

## CONCLUSION

In light of the foregoing, we affirm the trial court's denial of relief on Zack's postconviction motion to vacate his conviction of first-degree murder and sentence of death, and we deny habeas relief.

It is so ordered.

LABARGA, C.J., and QUINCE, J., concur.
CANADY, J., concurs specially with an opinion, in which POLSTON, J., concurs.
PARIENTE, J., concurs in result with an opinion.
LAWSON, J., concurs in result with an opinion.
LEWIS, J., concurs in part and dissents in part.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., specially concurring.

I concur in the conclusion that Zack's IQ scores justify the denial of his intellectual disability claim. I also agree that Zack is not entitled to Hurst v.

Florida, 136 S. Ct. 616 (2016), postconviction relief and that the habeas petition should therefore be denied.  But I would not rely on Asay v. State, 210 So. 3d 1 (Fla. 2016).  Instead, I would deny the Hurst claim on two grounds.  First, no Hurst error occurred in this case—given the contemporaneous convictions establishing aggravation.  See Hurst v. State, 202 So. 3d 40, 77-83 (Fla. 2016) (Canady, J., dissenting).  Second, in any event Hurst should not be given retroactive application.  See Mosley v. State, 209 So. 3d 1248, 1285-91 (Fla. 2016) (Canady, J., concurring in part and dissenting in part).

POLSTON, J., concurs.

PARIENTE, J., concurring in result.

I would not deny retroactive application of Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016), cert. denied, No. 16-998 (U.S. May 22, 2017), to Zack, but because I am bound by this Court's precedent from Asay v. State, 210 So. 3d 1 (Fla. 2016), I concur in result with the majority's rejection of Zack's Hurst claim.  I do concur, however, in the majority's rejection of Zack's intellectual disability claim and write separately to emphasize that Zack's range of IQ scores do not approach "the test's acknowledged and inherent margin of error."  Hall v. Florida, 134 S. Ct. 1986, 2001 (2014).  As the majority explained, "[t]he record demonstrates five I.Q. scores for Zack: a score of 92 in 1980 when Zack was 11 years old, and four scores after Zack turned 18—84 and 86 in 1997 at 27 years of age, 79 in 2002, and 80 in

2015." Majority op. at 10. Thus, because Zack's lowest I.Q. scores do not fall within the test's margin of error, it is unnecessary to conduct a "conjunctive and interrelated" assessment of Zack's evidence of intellectual disability as required by Hall. Cf. Walls v. State, 213 So. 3d 340, 346 (Fla. 2016); Oats v. State, 181 So. 3d 457, 467 (Fla. 2015).

LAWSON, J., concurring in result.

See Okafor v. State, No. SC15-2136, slip op. at 15 (Fla. June 8, 2017) (Lawson, J., concurring specially).

An Appeal from the Circuit Court in and for Escambia County,
    Linda Lee Nobles, Judge - Case No. 171996CF002517XXXAXX
And an Original Proceeding – Habeas Corpus

Robert S. Friedman, Capital Collateral Regional Counsel, and Dawn B. Macready and Stacy Biggart, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, Florida,

    for Appellee/Respondent