# Supreme Court of Florida

_____

No. SC16-448
_____

**JASON DIRK WALTON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC17-1083
_____

**JASON DIRK WALTON,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[May 17, 2018]

PER CURIAM.

This case is before the Court on appeal by Jason Walton from an order

denying a motion to vacate sentences of death under Florida Rule of Criminal

Procedure 3.851.  Walton also petitions this Court for writ of habeas corpus.  We

have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the postconviction court's denial of relief and deny Walton's petition for writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

Walton was convicted and sentenced to death for the execution-style murders of three individuals that occurred during the commission of a robbery and burglary. *Walton v. Dugger* (*Walton IV*), 634 So. 2d 1059, 1060 (Fla. 1993).

> On direct appeal, this Court affirmed the convictions but vacated the death sentences because the trial court failed to afford Walton an opportunity to confront two codefendants whose confessions and statements were presented during the penalty phase. *See* [*Walton v. State* (*Walton I*), 481 So. 2d 1197,] 1198-1201 [(Fla. 1985)]. The trial court conducted a second penalty phase and the jury again recommended death on all three convictions. *See Walton v. State* [(*Walton II*)], 547 So. 2d 622, 623 (Fla. 1989).[1] The trial court again imposed the death penalty on all three convictions, and this Court affirmed those sentences on appeal. *See id.* at 626. The United States

---

1. The trial judge found the following aggravating factors:

(1) the murders were committed during the commission of a robbery and burglary; (2) the murders were committed for pecuniary gain; (3) the murders were committed in an especially heinous, atrocious, or cruel fashion; (4) the murders were committed in a cold, calculated, and premeditated manner; and (5) the murders were committed for the purpose of avoiding a lawful arrest. The trial judge noted that the first two aggravating circumstances would be considered as one. The trial judge found no mitigating factors and imposed the death sentence.

*Walton II*, 547 So. 2d at 624.

- 2 -

Supreme Court denied certiorari review. *See Walton v. Florida* [(*Walton III*)], 493 U.S. 1036 (1990).

Walton filed his initial postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850, in which he alleged that trial counsel was ineffective. *See Walton* [*IV*], 634 So. 2d [at] 1060-61 . . . . After an evidentiary hearing, the trial court denied the motion. *See id.* Walton appealed that denial to this Court and petitioned for a writ of habeas corpus. *See id.* This Court initially relinquished jurisdiction to the trial court for resolution of a public records request by Walton. *See id.* at 1062. On remand, Walton amended his previously filed rule 3.850 motion to add claims based upon information discovered in the public records and newly adduced evidence. *See Walton v. State* [(*Walton V*)], 847 So. 2d 438, 442-43 (Fla. 2003). One such claim was that trial counsel was ineffective for failure to adequately investigate and prepare for trial. *See id.* at 442 n.2. The trial court again denied all of Walton's claims. *See id.* at 443. Walton appealed that denial to this Court and again petitioned this Court for a writ of habeas corpus. *See id.* This Court affirmed the denial of Walton's postconviction motion and denied habeas relief. *See id.* at 460. [This Court] also denied a subsequent petition for a writ of habeas corpus filed by Walton pursuant to *Ring v. Arizona*, 536 U.S. 584 (2002). *See Walton v. Crosby*, 859 So. 2d 516 (Fla. 2003).

Walton thereafter filed a successive postconviction motion pursuant to Florida Rule of Criminal Procedure 3.851. *See Walton v. State* [(*Walton VI*)], 3 So. 3d 1000, 1002 (Fla. 2009). The trial court summarily denied relief. *See id.* at 1002. Walton appealed that denial to this Court, and this Court affirmed the order of the postconviction court. *See id.*

*Walton v. State* (*Walton VII*), 77 So. 3d 639, 640-41 (Fla. 2011). In 2010, Walton

filed a second successive motion for postconviction relief pursuant to rule 3.851.

*Id.* at 641. The postconviction court denied Walton's motion. *See id.* at 642. This

Court affirmed the order of the postconviction court. *Id.* at 644.

- 3 -

On May 7, 2015, Walton filed a third successive postconviction motion asserting that he should either be resentenced to life or receive a new penalty phase due to the fact that his codefendant, Richard Cooper, was resentenced to life based on a cumulative review of the evidence. On December 28, 2015, the postconviction court denied Walton's motion. On March 7, 2016, Walton filed a notice of appeal to this Court. On September 16, 2016, this Court relinquished jurisdiction to allow for rehearing. On October 4, 2016, the postconviction court granted rehearing.

On June 20, 2016, Walton filed a fourth successive postconviction motion,[2] asserting that changes in Florida's capital sentencing law are part of the cumulative review of newly discovered evidence. On January 13, 2017, the postconviction court denied Walton's motion. This appeal follows.

Additionally, on June 8, 2017, Walton filed a petition for habeas relief. This Court stayed the proceedings on September 15, 2017, and then, on September 27, 2017, issued an order for Walton to show cause why *Hitchcock v. State*, 226 So. 3d 216 (Fla.), *cert. denied*, 138 S. Ct. 513 (2017), does not control.

---

2. Walton's fourth successive postconviction motion reasserted, in part, Walton's third successive postconviction motion arguments in light of *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).

## ANALYSIS

We affirm the postconviction court's denial of relief for the reasons discussed below.

*Walton's Cumulative Analysis Claim*

Walton contends that a proper *Swafford*[3]/*Hildwin*[4] cumulative analysis requires consideration of all changes in the law that might apply if a new trial were granted. We find this claim to be meritless.

> To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. *See Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (*Jones II*). Newly discovered evidence satisfies the second prong of the *Jones II* test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." *Jones II*, 709 So. 2d at 526 (quoting *Jones v. State*, 678 So. 2d 309, 315 (Fla. 1996)). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence. *See Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991) (*Jones I*).

> In determining whether the evidence compels a new trial, the postconviction court must "consider all newly discovered evidence which would be admissible" and must "evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial." *Id.* at 916. This determination includes

---

3. *Swafford v. State*, 125 So. 3d 760 (Fla. 2013).

4. *Hildwin v. State*, 141 So. 3d 1178 (Fla. 2014).

whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether this evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.

*Jones II*, 709 So. 2d at 521 (citations omitted).

When . . . the postconviction court rules on a newly discovered evidence claim after an evidentiary hearing, this Court "review[s] the trial court's findings on questions of fact, the credibility of witnesses, and the weight of the evidence for competent, substantial evidence." *Green v. State*, 975 So. 2d 1090, 1100 (Fla. 2008). In addition, "we review the trial court's application of the law to the facts de novo." *Id.*

*Swafford*, 125 So. 3d at 767-68 (alteration in original) (quoting *Marek v. State*, 14 So. 3d 985, 990 (Fla. 2009)).

As to the first prong of the newly discovered evidence test, the postconviction court found that the resentencing of codefendant Cooper qualified as newly discovered evidence. We conclude that the postconviction court's finding is supported by competent, substantial evidence. *See Jones II*, 709 So. 2d at 521 ("First, in order to be considered newly discovered, the evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.' " (quoting *Torres–Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla. 1994))).

The second prong of the newly discovered evidence test requires that "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." *Id.* (citing *Jones I*, 591 So. 2d at 911, 915). The postconviction court found that Walton failed to show that the resentencing of his codefendant, Cooper, to a life sentence would probably result in a life sentence for Walton on retrial. Walton contends that the postconviction court erred because a proper cumulative analysis, as performed in *Swafford* and *Hildwin*, requires consideration of changes in the law. Walton asserts that his newly discovered evidence, considered together with the changes to Florida's capital sentencing law, i.e., *Hurst*, would probably result in him receiving a life sentence; thus he is entitled to resentencing.

As an initial matter, this Court has consistently applied its decision in *Asay v. State* (*Asay V*), 210 So. 3d 1 (Fla. 2016), *cert. denied*, 138 S. Ct. 41 (2017), denying the retroactive application of *Hurst v. Florida*, 136 S. Ct. 616 (2016), as interpreted in *Hurst*, to defendants whose death sentences were final when the Supreme Court decided *Ring*. *See, e.g.*, *Hitchcock*, 226 So. 3d at 217; *Zack v. State*, 228 So. 3d 41, 47-48 (Fla. 2017), *petition for cert. filed*, No. 17-8134 (U.S. Mar. 12, 2018); *Marshall v. Jones*, 226 So. 3d 211, 211 (Fla. 2017), *petition for cert. filed*, No. 17-7869 (U.S. Feb. 20, 2018); *Willacy v. Jones*, No. SC16-497, 2017 WL 1033679, at *1 (Fla. Mar. 17, 2017); *Lambrix v. State*, 217 So. 3d 977,

988-89 (Fla.), *cert. denied*, 138 S. Ct. 312 (2017); *Bogle v. State*, 213 So. 3d 833, 855 (Fla. 2017), *cert. denied*, 138 S. Ct. 738 (2018); *Gaskin v. State*, 218 So. 3d 399, 401 (Fla.), *cert. denied*, 138 S. Ct. 471 (2017). Walton's death sentences became final in 1990. *See Walton III*, 493 U.S. 1036. Therefore, Walton is among those defendants whose death sentences were final before *Ring*. Thus it is clear that *Hurst* is not applicable to Walton.

Turning to what may be considered within a cumulative analysis, this Court stated in *Swafford*:

> The *Jones* standard requires that, in considering the effect of the newly discovered evidence, we consider all of the admissible evidence that could be introduced at a new trial. *Jones II*, 709 So. 2d at 521. In determining the impact of the newly discovered evidence, the Court must conduct a cumulative analysis of all the evidence so that there is a "total picture" of the case and "all the circumstances of the case." *Lightbourne v. State*, 742 So. 2d 238, 247 (Fla. 1999) (quoting *Armstrong v. State*, 642 So. 2d 730, 735 (Fla. 1994)).

*Swafford*, 125 So. 3d at 775-76. This Court did not consider any change in law within *Swafford*. *See generally id.* In *Swafford*, this Court reviewed an appeal from a postconviction court's finding that newly discovered negative acid phosphatase[5] (AP) results would not have probably produced an acquittal. *See id.* at 766. This Court disagreed, holding that the newly discovered AP evidence "so

---

5. Acid phosphatase is commonly found in seminal fluid. *See Swafford*, 125 So. 3d at 766.

significantly weakened the case against Swafford that it g[ave] rise to a reasonable doubt as to his culpability for the sexual battery." *Id.* at 768. This Court then, in performing a cumulative analysis, held that the newly discovered evidence changed the entire character of the case and affected the admissibility of evidence that was originally presented to the jury. *Id.* at 775-78. In no part of this Court's decision in *Swafford* was there a discussion or consideration of statutory or decisional changes in the law. *See id.* Although this Court stated that the newly discovered evidence test "focuses on the likely result that would occur during a new trial with all admissible evidence at the new trial being relevant to that analysis," there is no mention of any changes in law that must be taken into account within a cumulative analysis. *See id.* at 776. Thus this Court did not hold in *Swafford* that a cumulative analysis requires consideration of changes in the law that might apply if a new trial were granted. *See generally id.*

Neither did this Court consider any changes in law while performing a cumulative analysis in *Hildwin*. *See generally* 141 So. 3d 1178. In *Hildwin*, this Court reviewed an appeal from a postconviction court's denial of a motion based on newly discovered evidence that established that the DNA did not belong to the defendant. *See id.* at 1183. This Court held that the newly discovered evidence established that the DNA found on the victim's underwear and on the washcloth at the crime scene belonged to another suspect, which supported the defendant's story

that he saw the killer wipe his face with a "white rag." *See id.* at 1192. This Court then held that the cumulative effect of the newly discovered evidence weakened the case against Hildwin to such an extent that it gave rise to a reasonable doubt as to his culpability. *See id.* at 1193. This Court did not discuss any change in law that was considered within the cumulative effect of the newly discovered evidence. *See generally id.*

Thus in neither *Swafford* nor *Hildwin* did this Court hold that a cumulative analysis requires consideration of changes in the law that might apply if a new trial were granted. *See generally Swafford*, 125 So. 3d 760; *Hildwin*, 141 So. 3d 1178. This Court applies the *Witt v. State*, 387 So. 2d 922 (Fla. 1980), standard to determine whether decisional changes in the law require retroactive application. *See Coppola v. State*, 938 So. 2d 507, 510-11 (Fla. 2006); *see also State v. Glenn*, 558 So. 2d 4, 6 (Fla. 1990) ("[A]ny determination of whether a change in the law requires retroactive application should be decided upon traditional principles pertaining to changes in decisional law as set forth in *Witt*." (citing *McCuiston v. State*, 534 So. 2d 1144, 1146 (Fla. 1988))). Viewing decisional changes in the law as newly discovered "facts" would erase the need for a retroactivity analysis pursuant to *Witt*. *See Coppola*, 938 So. 2d at 510-11.

Yet Walton contends that he satisfies the second prong of the newly discovered evidence standard because it is probable that a resentencing jury will

not unanimously return death recommendations, and thus, it is probable that life sentences will be imposed.  Clearly, Walton is attempting to circumvent this Court's retroactivity holding in *Asay V* when he asserts that *Hurst* constitutes a newly discovered fact and is applicable through a cumulative analysis.  Thus we conclude that Walton's attempt to shoehorn *Hurst* retroactivity through a newly discovered evidence claim is meritless.  Accordingly, we hold that the postconviction court properly denied Walton's motion.

*Walton's* McCloud[6] *Claim*

In Walton's third successive postconviction motion he asserted that he is entitled to a life sentence because his sentences of death are disproportionate to the life sentences imposed on all of his codefendants.   The postconviction court found that the life sentences of Walton's two other codefendants, Terry Van Royal, Jr. and Jeffrey McCoy, were irrelevant with regard to proportionality because Van Royal was resentenced to life based on a legal error by the trial judge and McCoy received a life sentence as part of a negotiated plea.  Walton now contends that the postconviction court's reasoning is contrary to *McCloud*.  However, *McCloud* is inapposite because Walton's codefendants received lesser sentences due to purely legal reasons.  *See Walton II*, 547 So. 2d at 623; *see also Jeffries v. State*, 222 So.

---

6. *McCloud v. State*, 208 So. 3d 668 (Fla. 2016).

3d 538, 547 (Fla. 2017) ("[W]e have historically refused to review the relative culpability of codefendants when a codefendant pleads guilty and receives a lesser sentence as a result."); *Farina v. State*, 937 So. 2d 612 (Fla. 2006) (holding that the life sentence of a codefendant was irrelevant because the basis for the codefendant receiving the life sentence was purely legal and had no connection to the nature or circumstances of the crime or to the defendant's character or record). Moreover, this Court previously directly addressed Walton's culpability compared to Van Royal, finding that "Walton was indeed more culpable than Van Royal." *Walton V*, 847 So. 2d at 449.

### *Walton's* Hurst *Claims*

Walton also raises several *Hurst* claims,[7] which we reject. This Court has held that *Hurst* does not apply retroactively to capital defendants whose sentences were final before the United States Supreme Court issued its opinion in *Ring*. *Asay V*, 210 So. 3d at 7-14. In *Hitchcock*, this Court affirmed its decision in *Asay V*, denying the retroactive application of *Hurst v. Florida*, as interpreted in *Hurst*, to defendants whose death sentences were final when the United States Supreme Court decided *Ring*. *Hitchcock*, 226 So. 3d at 217; *see also Zack*, 228 So. 3d at 47-

---

7. Walton claims that: (1) his death sentences violate the Eighth Amendment and the Florida Constitution; and (2) the retroactivity rulings in *Asay V* and *Mosley v. State*, 209 So. 3d 1248 (Fla. 2016), violate the Eighth Amendment principles announced in *Furman v. Georgia*, 408 U.S. 238 (1972).

48; *Marshall*, 226 So. 3d at 211; *Willacy*, 2017 WL 1033679, at *1; *Lambrix v. State*, 227 So. 3d 112, 113 (Fla.), *cert. denied*, 138 S. Ct. 312 (2017); *Bogle*, 213 So. 3d at 855; *Gaskin*, 218 So. 3d at 401. Walton is among those defendants whose death sentences became final before *Ring*.

This Court has previously rejected Eighth Amendment *Hurst* claims. *See Hannon v. State*, 228 So. 3d 505, 513 (Fla.), *cert. denied*, 138 S. Ct. 441 (2017); *Lambrix*, 227 So. 3d at 113; *Asay v. State* (*Asay VI*), 224 So. 3d 695, 702-03 (Fla. 2017); *Hitchcock*, 226 So. 3d at 216-17. Walton disagrees with the retroactivity cutoff that this Court set in *Asay V*; however, that decision is final.[8]

*Walton's Habeas Claim*

Walton's petition sought relief pursuant to the Supreme Court's decision in *Hurst v. Florida*, and our decision on remand in *Hurst*. This Court stayed Walton's appeal pending the disposition of *Hitchcock*. After this Court decided *Hitchcock,* Walton responded to this Court's order to show cause arguing why *Hitchcock* should not be dispositive in this case. After reviewing Walton's response to the order to show cause, as well as the State's arguments in reply, we conclude that Walton is not entitled to relief. Walton's death sentences became final in 1990. *Walton III*, 493 U.S. 1036. Thus *Hurst* does not apply retroactively

---

8. The Supreme Court denied certiorari review on August 24, 2017. *See Asay v. Florida*, 138 S. Ct. 41, 41-42 (2017).

- 13 -

to Walton's sentences of death. *See Hitchcock*, 226 So. 3d at 217. Accordingly, we deny Walton's petition for habeas relief.

## CONCLUSION

For the reasons discussed, we affirm the postconviction court's denial of Walton's motion for postconviction relief and deny his petition for writ of habeas corpus.

It is so ordered.

LABARGA, C.J., and LEWIS, POLSTON, and LAWSON, JJ., concur.
PARIENTE and CANADY, JJ., concur in result.
QUINCE, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Pinellas County,
        W. Douglas Baird, Senior Judge – Case No. 521983CF000630XXXXNO
And an Original Proceeding – Habeas Corpus

Neal Dupree, Capital Collateral Regional Counsel, and Bryan E. Martinez, Staff Attorney, Southern Region, Fort Lauderdale, Florida; and Martin J. McClain of McClain & McDermott, P.A., Wilton Manors, Florida,

        for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Timothy A. Freeland, Senior Assistant Attorney General, Tampa, Florida,

        for Appellee/Respondent