# Supreme Court of Florida

_____

No. SC2023-0015
_____

**FLOYD WILLIAM DAMREN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

September 14, 2023

PER CURIAM.

Floyd William Damren, a prisoner under sentence of death, appeals the circuit court's order summarily denying his second successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

## I. BACKGROUND

Damren was convicted of the 1994 first-degree murder of Don Miller and sentenced to death. *Damren v. State*, 696 So. 2d 709, 710-11 (Fla. 1997). This Court affirmed Damren's convictions and

sentences[1] on direct appeal. *Id.* at 714. We thereafter affirmed the denial of Damren's initial motion for postconviction relief and denied his habeas petition. *Damren v. State*, 838 So. 2d 512 (Fla. 2003). We also affirmed the denial of Damren's first successive motion for postconviction relief. *Damren v. State*, 236 So. 3d 230 (Fla. 2018).

On June 10, 2022, Damren filed his second successive motion, in which he raised two claims: (1) newly discovered evidence of his autism spectrum disorder (ASD) renders his death sentence unreliable; and (2) newly discovered evidence of his post-traumatic stress disorder (PTSD) at the time of the offenses renders his death sentence unreliable. Damren claimed that these diagnoses qualified as newly discovered evidence because ASD was not being diagnosed or recognized in adults at the time of his 1995 trial and his PTSD was undiagnosed because it was being "masked" by his previously undiagnosed ASD. His claims relied on a report of a 2021 neuropsychological evaluation by Marlyne Israelian, Ph.D., a

---

1. Damren was also convicted of armed burglary and aggravated assault arising out of the same incident, for which he was sentenced as a habitual felony offender to life imprisonment and ten years' imprisonment, respectively.

clinical psychologist, which resulted in the ASD and PTSD diagnoses.

The postconviction court summarily denied Damren's motion as untimely. The postconviction court found that there did not appear to be any dispute that Damren exhibited the symptoms of ASD prior to 2019, yet Damren provided no explanation why he could not have been diagnosed in 2019 or any time prior to 2021 through due diligence. The court noted that Dr. Israelian's report of her recent evaluation of Damren cited to articles related to adults with ASD that were published in 2019 and 2020. As to the PTSD diagnosis, the postconviction court assumed that it could have only been discovered in conjunction with Damren's ASD, but because Damren provided no explanation why he could not have been diagnosed with ASD in 2019 or any time prior to 2021, the postconviction court found that there was also no reason his PTSD could not have been discovered prior to 2021. This appeal followed.

## II. ANALYSIS

We find no error in the postconviction court's summary denial of Damren's second successive motion for postconviction relief. Damren's claims were facially insufficient and untimely.

In *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998), this Court set forth the test for a conviction to be set aside on the basis of newly discovered evidence as follows:

> First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence."
>     Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.

(Alteration in original) (citations omitted); *see Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991). Because Damren sought to vacate his death sentence rather than his conviction, the second prong of *Jones* "requires that the newly discovered evidence would probably yield a less severe sentence"—i.e., a life sentence—rather than an acquittal. *Walton v. State*, 246 So. 3d 246, 249 (Fla. 2018) (quoting *Swafford v. State*, 125 So. 3d 760, 767 (Fla. 2013)). Thus, to raise a facially sufficient claim based on newly discovered evidence here, it was necessary for Damren to assert that there is evidence that was not and could not have been known by the use of due diligence at the time of trial and that the evidence is of such nature that it would probably produce a life sentence on retrial. *See Hutchinson*

*v. State*, 343 So. 3d 50, 53 (Fla. 2022) ("To be facially sufficient, a claim of newly discovered evidence must meet the two-part *Jones* test."), *cert. denied*, 143 S. Ct. 601 (2023).

Damren failed to allege the second prong of the *Jones* standard in both claims of his second successive motion. In his first claim, Damren alleged that evidence of his

> ASD and PTSD, discussed in Claim 2, coupled with his use of copious amounts of alcohol on the night of the murder would have offered the judge and jury proof that his ability to conform his conduct was impaired, diminishing his moral culpability. This would not have excused his conduct, but it would have lessened his moral responsibility and made a life sentence a reasonable and merciful sentence.

Alleging that the asserted newly discovered evidence would have "made a life sentence a reasonable and merciful sentence" is a far cry from alleging that it would probably produce a life sentence on retrial. In his second claim, Damren alleged that "[h]ad the jury or the sentencing court heard [evidence that Damren has PTSD] there is a reasonable probability that the sentence would have been life." Alleging a reasonable probability of a life sentence at retrial is not equivalent to alleging a probable life sentence at a retrial and yields a facially insufficient claim.

The requirement in the second prong of the *Jones* test that the alleged newly discovered evidence be of such a nature that it would "probably" produce an acquittal on retrial is on par with the "more likely than not" standard of prejudice. *See Gaskin v. State*, 822 So. 2d 1243, 1247 n.3 (Fla. 2002) (noting that the "more likely than not" standard is "invoked when a defendant asserts entitlement to a new trial on the basis of newly discovered evidence"). The "reasonable probability" prejudice standard—which is used, for example, in assessing claims of ineffective assistance of counsel or the materiality of exculpatory information not disclosed to the defense by the prosecution—is a lower standard of prejudice than "preponderance of the evidence" or "more likely than not."[2] *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984); *see also Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (noting that *Strickland*'s "reasonable probability" prejudice standard "does not require a showing that counsel's actions 'more likely than not

---

2. We have explained that "[a] 'preponderance' of the evidence is defined as 'the greater weight of the evidence,' *Black's Law Dictionary* 1201 (7th ed. 1999), or evidence that 'more likely than not' tends to prove a certain proposition." *Gross v. Lyons*, 763 So. 2d 276, 280 n.1 (Fla. 2000) (citing *American Tobacco Co. v. State*, 697 So. 2d 1249, 1254 (Fla. 4th DCA 1997)).

altered the outcome' "); *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (explaining that when the "reasonable probability" of a different result standard of prejudice is employed, "[t]he question is not whether the defendant would more likely than not have received a different verdict").  In other words, while the "reasonable probability" prejudice standard means a probability higher than mere chance, it does not mean a probability greater than fifty percent; conversely, the "probably" prejudice standard (and, accordingly, the "more likely than not" standard) *does* mean a probability greater than fifty percent.  Thus, because Damren failed to allege that he *probably* would be sentenced to life if the jury or trial court were told that he has ASD or PTSD, his claims of newly discovered evidence were facially insufficient.  We therefore affirm the summary denial of relief.

We also affirm the summary denial because Damren has not established that his claims were timely.  A motion for postconviction relief must be filed within one year of the date that the defendant's conviction and sentence became final.  Fla. R. Crim. P. 3.851(d)(1). Damren's convictions and sentences became final when the United States Supreme Court denied certiorari review of his direct appeal

proceedings on January 12, 1998. *Damren v. Florida*, 522 U.S. 1054 (1998); *see* Fla. R. Crim. P. 3.851(d)(1)(B) ("For the purposes of this rule, a judgment is final . . . on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed."). The one-year time limit therefore expired in 1999. But there is an exception to the one-year time limit for motions alleging "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R. Crim. P. 3.851(d)(2)(A). "To be considered timely filed as newly discovered evidence, [a] successive rule 3.851 motion [i]s required to have been filed within one year of the date upon which the claim became discoverable through due diligence." *James v. State*, 323 So. 3d 158, 160 (Fla. 2021) (quoting *Jimenez v. State*, 997 So. 2d 1056, 1064 (Fla. 2008)), *cert. denied*, 142 S. Ct. 1678 (2022).

For purposes of this proceeding, we accept as true Damren's assertion that the 2021 ASD and PTSD diagnoses are the facts on which his claims are based. Damren claims that Dr. Israelian informed counsel on June 10, 2021, that he has ASD and PTSD and thus believes the claims were timely filed one year later on

- 8 -

June 10, 2022. As to timeliness, Damren argued that his ASD diagnosis "could not have been raised at the time of the initial trial in 1994 as autism, or Asperger's as it was known then,[3] was not diagnosed in adults." He argued that his PTSD could not have been diagnosed before he was diagnosed with ASD because "without the benefit of knowing that he suffered from ASD, a clinician could not have accurately evaluated whether he met diagnostic criteria for PTSD because he or she would lack the ability to judge the magnitude and severity of symptom presentation"—in other words, the ASD "masked" the PTSD.

At the case management conference on his motion, Damren's counsel advised the postconviction court that Damren was evaluated in 1995 for "organic deficits" and in 2017 "for traumatic brain injury"

> [a]nd as [counsel] sort of spoke with friends of [Damren's] and got to see the photos he had taken in Vietnam, we sort of felt that there was no way that he had, you know,

---

3. "Asperger syndrome, or Asperger's, is a previously used diagnosis on the autism spectrum. In 2013, it became part of one umbrella diagnosis of Autism Spectrum Disorder (ASD) in the Diagnostic and Statistical Manual of Mental Disorders 5 (DSM-5)." *What is Asperger Syndrome?*, Autism Speaks, https://www.autismspeaks.org/types-autism-what-asperger-syndrome (last visited June 5, 2023).

served in Vietnam and not been affected by that experience. So we did hire another expert in 2020, and that was a neuropsych[ologist] with a military background. However, that was sort of at the height of COVID and that particular doctor refused to go to the prison in person, and they wouldn't allow him to evaluate Mr. Damren by Zoom.

Now, sort of by happenstance, we had retained Dr. Israelian in another case and knew that she was willing to go see him in person, and so it was really just chance that we ended up with this particular expert evaluating him, who does have—and she does have a strong background in both PTSD and autism. So that was how the evaluation came about.

Damren also argued below that "[n]ot having asked Dr. Israelian to assess for ASD, it was mere serendipity that she had extensive training and experience in diagnosing and treating ASD in adults and was able to diagnose him."

Instead of enlightening the postconviction court or this Court as to when ASD became diagnosable in adults so as to establish when Damren's ASD and PTSD became discoverable by the exercise of due diligence, Damren seems to argue that regardless of when ASD became diagnosable in adults, no amount of diligence could have led to his diagnoses before June 10, 2021, because ASD was only diagnosed at that time by "chance," "happenstance," or "serendipity"—due to the substitution of Dr. Israelian in place of the

doctor who was supposed to have evaluated Damren in 2020—and the PTSD could not be diagnosed until the ASD was diagnosed. We disagree.

Damren's ASD diagnosis became discoverable through due diligence whenever it was that ASD became diagnosable in adults. That date would have served as the triggering date for filing a claim based on newly discovered evidence of ASD within one year under rule 3.851(d)(2)(A). *Cf. Dillbeck v. State*, 304 So. 3d 286, 288 (Fla. 2020) ("Thus, the facts on which the claim is predicated—a diagnosis of ND-PAE and qEEG results—could have been discovered by the exercise of due diligence as early as 2013, when ND-PAE became a diagnosable condition."). Damren's claim that there was no indication to counsel that he suffered from ASD strains credibility. Dr. Israelian's report noted that Damren has exhibited since childhood a number of the better-known characteristics of ASD—at least some of which we would expect qualified capital counsel to have recognized—including difficulty recognizing different expressions of speech; a tendency to interpret things very literally; difficulty initiating and maintaining a reciprocal conversation; speaking extensively about his interests

regardless of their relevance to the task at hand or the interests of his audience; a flat affect; and difficulty maintaining eye contact. *See* Am. Psych. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 56 (5th ed., text rev., 2022). In any event, counsel's ignorance does not result in a triggering date that manifests only when counsel decides to enlighten himself.

"It is incumbent upon the defendant to establish the timeliness of a successive postconviction claim," *Mungin v. State*, 320 So. 3d 624, 626 (Fla. 2020), but without credibly offering the date on which his claims became discoverable, Damren has failed to establish that they were timely raised. Thus, the postconviction court did not err in denying Damren's motion as untimely.

### III. CONCLUSION

For these reasons, we affirm the circuit court's summary denial of Damren's second successive motion for postconviction relief.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Clay County,
Steven B. Whittington, Judge
Case No. 101994CF000537XXAXMX

Robert Friedman, Capital Collateral Regional Counsel, and
Elizabeth Spiaggi, Assistant Capital Collateral Regional Counsel,
Northern Region, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Timothy
A. Freeland, Senior Assistant Attorney General, Tampa, Florida,

    for Appellee